SCHOFIELD v. TWINING. (No. 1.)

(Circuit Court, E. D. Pennsylvania. January 28, 1904.)

No. 44.

1. NATIONAL BANKS — INSOLVENCY — STOCKHOLDERS — DOUBLE LIABILITY — TRANSFER OF SHARES.

Defendant, prior to the failure of a national bank in which his son was a director, owned certain shares of the bank's stock, which he sold to his son, receiving in payment a demand note, secured by certain collateral. At the time of the sale the son promised that he would see that the

---

¶ 1. Who are liable as shareholders in national banks, see notes to Beal v. Essex Sav. Bank, 15 C. C. A. 130; Earle v. Carson, 46 C. C. A. 503.

See Banks and Banking, vol. 6, Cent. Dig. § 916.

shares were properly transferred, but he failed to do so. Defendant made no attempt to see that the stock was transferred, and it stood in his name on the books of the bank at the time of its failure. *Held*, that the son was prima facie the father's agent to transfer the shares, and that in the absence of proof that the transfer was in good faith, and of a prompt attempt to have the stock transferred on the books of the bank, the father was liable to assessment thereon.

At Law.  On motion for new trial.

Asa W. Waters, for plaintiff.

Wm. Y. C. Anderson and Wm. Jay Turner, for defendant.

J. B. McPHERSON, District Judge.  The First National Bank of Asbury Park went into the hands of a receiver in February, 1903, and an assessment of $53 per share has since been levied upon the shareholders.  This suit is brought to recover the assessment from the defendant, who was a registered shareholder at the time of the bank's failure, and the question to be decided is whether he has offered sufficient evidence to be submitted to a jury in support of his contention that he ought to be relieved from liability in spite of the fact that the shares, in respect of which the assessment has been levied, still stand in his name upon the books of the bank.  There is no dispute about the facts.  If they justify the inference that he had complied with the legal rules that govern the duty of one who sells such stock, the case should have been submitted to the jury.

On or about November 4, 1902, the defendant, who owned 40 shares of stock, sold them to his son A. C. Twining, and received in payment a demand note, secured by certain collateral.  At the time the sale was made, A. C. Twining, who was then a director of the bank, promised his father that he would see that the shares were properly transferred.  He never fulfilled this promise, however, and the defendant himself made no attempt to have the transfer made.  So far as appears, he never spoke to the cashier or president, or any other officer of the bank, upon the subject, and never inquired whether the stock had actually been transferred.  Under these circumstances, it seems to me that the authorities clearly decide that the defendant's liability continued.  It is needless to discuss the various cases in which the stockholder's double liability has been considered.  The latest decisions are Earle v. Carson, 188 U. S. 42, 23 Sup. Ct. 254, 47 L. Ed 373, and Rankin v. Fidelity Trust Co., 189 U. S. 242, 23 Sup. Ct. 553, 47 L. Ed. 792, where other cases upon the subject are referred to.  It seems to me to be apparent from the facts above stated that the defendant intrusted the transfer of these shares to his son as his agent, and is therefore responsible for his agent's default, or, if he did not make the son his agent, he confided in the promise that the shares would be transferred, and took the chance that it would be carried out. I do not think the fact important that the son was a director of the bank at the time.  It is probably true that he was an influential personage in the councils of the board, but he was not the transfer agent of the stock, and could not himself have made the requisite entries upon the books of the bank.  Merely as director, he had no authority to direct the cashier to make the transfer.  His right to give such an

order, or make a request of a similar character, was based upon the fact that he had bought the shares, and was entitled, as the purchaser, to have them transferred, or upon the fact that he was the seller's agent for the specific purpose of having the transfer made upon the books. In the most favorable aspect for the defendant, he was his father's agent; and his failure to request the proper officer to transfer the shares was merely the failure of an agent to perform a duty that he had promised his principal to perform, and for such default the principal must bear the consequences.

Moreover, there is not a particle of evidence in the case to show that the bank was solvent at the time the transfer took place, or (what is much more important) to show that the defendant honestly believed it to be solvent. For all that appears, the defendant may have known that the bank was then in failing circumstances, and may have transferred the stock for the purpose of evading the double liability. In all the cases that have been decided upon this subject, so far as I know, a registered stockholder has been required to offer evidence to show his good faith at the time the sale was made. Registry makes him prima facie liable, and the burden of proof is upon him to show a sale in good faith, and a proper attempt to have the transfer made upon the books of the bank.

As I think, the plaintiff was entitled to the verdict which the court directed the jury to render, and the motion for a new trial is accordingly refused.