THE ABILENE STATE BANK, *Appellant*, v. JAMES STRACHAN, *Appellee.*

No. 18,151.

SYLLABUS BY THE COURT.

1. BANK STOCK—*Assigned—Not Transferred on Stock Book— Shareholder Liable.* To effect an assignment and disposition of shares of capital stock in a bank so as to release the assignor from the superadded liability of shareholders fixed by law he must procure a transfer of the stock on the books of the bank in accordance with the provisions of the banking act.

2. ———— *Same.* Such a transfer is essential to a release from liability of a shareholder who sells and assigns his stock to the bank itself in payment of a previously contracted debt owing by him to the bank.

Appeal from Dickinson district court. Opinion filed May 10, 1913. Reversed.

*G. W. Hurd,* and *Arthur Hurd,* both of Abilene, for the appellant.

*C. S. Crawford,* of Abilene, for the appellee.

37—89 KAN.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the appellant, the Abilene State Bank, to recover from the appellee, James Strachan, $1000, the amount of his additional liability as a stockholder of the appellant bank. The petition recites that Strachan became the owner of ten shares of the capital stock of the bank on May 14, 1901, of the par value of $1000, that the bank became insolvent on September 1, 1910, and was placed in the hands of a receiver on November 22, 1910, that all the assets of the bank, including the double liability of stockholders, were insufficient to pay the liabilities of the bank, that Strachan had repeatedly been requested to make payment of $1000, his additional liability as a stockholder, but that he had always refused. Strachan's answer acknowledged that he had been a holder of the ten shares of stock, but he alleged that he had surrendered the shares to the bank in January, 1908, in part payment of a debt of about $2500 which he owed the bank. No record of the transfer, however, was made on the books of the bank. From the testimony it appears that the certificate of stock had endorsed thereon an assignment to John A. Flack, who, it was shown, was the cashier of the bank, but had absconded just before it was discovered that the bank was insolvent. The testimony in behalf of appellee was that Strachan was indebted to the bank on a note for $2400 on which there was unpaid interest in the amount of $192, and that in payment of the note and interest Strachan turned over to the bank the stock at a valuation of $1350, also a mortgage on property of the value of $1050 and a check for $138.67, and that at that time the certificate was delivered to the bank and the note surrendered to Strachan in the presence of Hallam, the president of the bank, and of Flack, its cashier. As to the financial condition of

Strachan, the testimony was that he owned a consider-able amount of real estate in that county, made up of both farm and town properties, and that besides the town property he owned at least a section of good farm land. The only witness who testified in regard to his solvency stated that "he was pretty heavily involved in debt, but I believe he was solvent." In behalf of the bank it was contended that there being no transfer of the stock as the law requires Strachan was not re-leased from his liability on the stock even if there was an acceptance of the stock by the officers of the bank. On the evidence produced the jury returned a verdict against the bank, and from the judgment rendered the bank appeals.

It may well be doubted whether, in the absence of a statute granting the power, there is authority in a corporation to purchase its own capital stock. (*Savings Bank v. Wulfekuhler*, 19 Kan. 60; *Bank v. Telephone Co.*, 88 Kan. 287, 128 Pac. 357; Note, 61 L. R. A. 621.)

As to a banking corporation the statutory provision is:

"No bank shall . . . be the purchaser or holder of any such shares unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale. After the expiration of six months any such stock shall not be considered as a part of the assets of any bank." (Gen. Stat. 1909, § 470.)

This statute, in effect, prohibits a bank from purchasing or dealing in its own stock. It is not the purpose for which a bank is organized, and if it were allowed to do so it might increase or decrease its capital stock above or below the limits prescribed by law. Creditors of a bank may look not only to a bank and its property but also to the added liability of its stock-

holders, and if a bank could purchase its own stock and thus withdraw its capital stock from existence it would greatly impair the security of creditors. As was said in *Savings Bank v. Wulfekuhler,* supra:

"The law provides in effect that not only the bank, with all its property, shall be liable for its debts, but also that each stockholder in the bank to the amount of his stock, shall also be held liable. (Const., art. 12, § 2; Gen. Stat. 198, § 32.) But if a bank may purchase in all its stock, and own it itself, then where would be the security to the creditors of the bank, except in the bank itself? They could not, after exhausting the property of the bank, find any stockholders to sue. The law never contemplated any such a thing." (p. 65.)

Here it is claimed that the stock of appellee was purchased to secure a previous existing debt which he owed the bank. It was proven that he was indebted to the bank, but whether the purchase was necessary to prevent loss to the bank is not so clear. He appears to have been indebted in a considerable sum, but it was shown that he had a great deal of valuable property, and the only other testimony on the subject was that he was solvent at the time he surrendered his stock to the bank. However, if it be assumed that there was some danger of loss and a real necessity for the purchase of the stock, still appellee can not be released from liability as a stockholder. This results from the conceded fact that the stock held by appellee was not transferred on the books of the bank. It has already been decided that under the statute regulating the transfer of stock (Gen. Stat. 1909, § 511) an effectual change of ownership can not be made which will relieve a stockholder from liability to creditors until the shares of stock are transferred on the books of the bank. In *Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153, it was said:

"A bank must at all times have a register of its stockholders. It must know who is entitled to vote its

stock, who is entitled to receive dividends, who may be called upon for assessments, and, generally, who should bear the burdens and receive the benefits of stock ownership. Besides this, persons dealing with a bank have a direct interest in its personnel, and recurring events illustrate the fact that the state as a conservator of the public welfare has a legitimate concern in the matter. Therefore the law provides that when a bank is organized the president or cashier shall transmit to the bank commissioner of the state a verified statement showing the names and residences of its stockholders and the amount subscribed and paid in by each one. (Laws 1897, ch. 47, § 5, Gen. Stat. 1901, § 411.) After a bank has been organized and has been authorized to do business the same certainty and publicity are required. (Laws 1897, ch. 47, § 47, Gen. Stat. 1901, § 453.) True, shares of stock are personal property, and as such are transferable; but upon a change of ownership the transfer must be made on the books of the bank, and must be certified immediately to the bank commissioner. The provision of section 52, quoted above, is that shares of stock 'shall be transferred on the books of the bank.' Under the well-known canons of construction this means that nothing short of a transfer on the books of the bank will be sufficient. The only kind of transfer which can avail, to affect the rights of the bank, its creditors and the public, is a transfer on the books of the bank. None other need be recognized." (p. 387.)

Counsel for appellee insists that a transfer on the books is not necessary where the bank itself is the purchaser, and this claim is based on the fact that no reference is made to a transfer in the section of the statute which provides that a bank may acquire its own stock to prevent loss on a previously existing debt. It was not necessary to repeat the provision governing transfers of stock in every section of the banking act. The provision for the transfer is not limited in its application to any particular class of purchasers, and no good reason is seen for excepting from its operation a transfer to the bank itself. Those who contracted with the bank while the stock stood in the name of

appellee are presumed to have relied on the record that he was a stockholder and, in a sense, stood as a surety for the liabilities of the bank. It is a matter of concern not only to creditors of the bank but also to those purchasing stock and who naturally look to the books to ascertain the amount of the assets and the funds that will be available upon the double liability of stockholders in the event of the insolvency of the bank. When the bank purchases the stock it amounts, as we have seen, to a withdrawal of that much of its capital stock from existence, and to that extent there is a reduction of the funds available from the double liability of stockholders. An unrecorded assignment of stock to the bank may, therefore, be just as prejudicial to the rights of those entering into contracts with the bank as would be an unrecorded transfer to an individual purchaser. Protection is as much needed in one instance as in the other, and manifestly the legislature intended to provide for a transfer of title that would protect all. An unregistered transfer of stock would not be invalid as between vendor and vendee (*Culp v. Mulvane,* 66 Kan. 143, 71 Pac. 273), but creditors, stockholders and everyone dealing with the bank may resort to the stock register to ascertain who are entitled to the rights and subject to the liabilities of stockholders, and if a holder of stock disposes of his shares without taking steps to register the transfer and negligently allows it to stand upon the books in his own name he is not released from liability, whoever may be the purchaser (*Plumb v. Bank of Enterprise,* 48 Kan. 484, 29 Pac. 699).

The judgment of the district court will, therefore, be reversed and the cause remanded with directions to enter judgment for the appellant.