## STATE v. WARE.

No. 10124—Opinion Filed May 31, 1921.

(Syllabus.)

1. **Limitation of Actions—Action by State to Enforce Liability of Shareholder in Failed Bank.**

The statute of limitations does not run against the state in an action to enforce the statutory liability of the shareholder in an insolvent bank taken over by the State Bank Commissioner, together with its assets, for the purpose of realizing upon the same in the interest of the depositors of said bank, and to reimburse the bank guaranty fund for the sum paid out to said depositors or creditors.

2. **Banks and Banking—Insolvency of State Bank—Liability of Stockholder.**

The presumption of liability on shares of stock in an insolvent bank, arising from the presence of a person's name on the stock register, is rebutted by evidence that a bona fide sale of the stock had been made, and that the vendor had performed every duty which the law imposed in order to secure the transfer on the registry of the bank.

3. **Same—Effect of Bona Fide Sale of Stock —Failure to Transfer on Bank's Books.**

Upon a reasonable constructtion of the statute imposing liability upon shareholders for the debts of state banks, and for all the objects intended to be accomplished by the provisions imposing liability on shareholders for such debts, the responsibility of the defendant ceased upon the surrender of certain stock certificates to the cashier of the bank, properly indorsed to the party to whom the shareholder had sold his stock, with the request that such officer make a transfer of the stock, upon the books of the bank, and where such cashier promised to comply with such request, and afterwards informed the shareholder that said request had been complied with, and such shareholder, who was at the time a director of the bank, tendered his resignation as such to the officers of the bank, informed them that he had sold and transferred his stock and that he could no longer act as a director, and such shareholder's connection with the bank thereafter ceased, although such transfer of stock was not in fact made upon the books of the bank.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by the State, on the relation of the Attorney General, against J. E. Ware to enforce shareholder's liability by reason of insolvency of state bank. Judgment for defendant, and plaintiff brings error. Affirmed.

S. P. Freeling, Atty. Gen., W. H. Zwick, Asst. Atty. Gen., and M. M. Thomas, Attorney for State Banking Department, for the plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Oklahoma county; Hon. J. W. Hayson, Judge.

This action was commenced by the state of Oklahoma, on relation of the Attorney General, as plaintiff, against J. E. Ware, as defendant, to enforce the statutory liability of the defendant as a shareholder in the Planters' & Mechanics' Bank, a defunct concern, the assets of which were taken over

by the Bank Commissioner of the state after the bank became insolvent.

The cause was tried to the court by stipulation of the parties upon an agreed statement of facts, and a judgment was rendered in favor of the defendant, to reverse which this proceeding in error was regularly commenced by the plaintiff. The stipulation upon which the cause was tried is as follows:

"Come now the parties hereto, the plaintiff, the state of Oklahoma, by S. P. Freeling, Attorney General, and J. I. Howard, his assistant Attorney General, and the defendant, J. E. Ware, by his attorneys, Everest, & Campbell, and stipulate and agree that said cause may be tried to the court without the intervention of a jury, upon the following agreed statement of facts, which facts are agreed by the parties to be the material facts in said controversy, and all the facts necessary to a correct determination thereof, and it is agreed as follows: 1. That on and prior to the 6th day of April, 1911, the Planters' & Mechanics' Bank, was a banking corporation, duly organized, existing and doing business under and by virtue of the banking laws of the state of Oklahoma, with an authorized capital stock of fifty thousand dollars divided into five hundred shares of par value of one hundred dollars each, with its principal place of business in Oklahoma City, Oklahoma county, state of Oklahoma. 2. That on the 6th day of April, 1911, the Bank Commissioner of the state of Oklahoma, acting under and by virtue of the laws of Oklahoma in such cases made and provided, took over the Planters' & Mechanics' Bank of Oklahoma City, Oklahoma, for the reason that said bank was then in an insolvent and failing condition and was unable to meet the demands of its creditors in the usual and customary manner and as such Bank Commissioner, took possession of books, records and assets of the said bank for the purpose of winding up its affairs, collecting the debts due it, and for the purpose of converting its assets into cash and paying the claims of unsecured depositors of said bank, and said Bank Commissioner is proceeding under the laws to perform his duty thereunder.

"3. That the cash available in said bank and that which thereafter becomes available out of the proceeds of the sale of the assets of said bank and the collection of notes and obligations due it, was and is insufficient to secure the notes and obligations of the depositors of said bank, and the plaintiff by and through the State Banking Board and the Bank Commissioner thereof, was compelled to and did pay a large sum of money out of the depositors' guaranty fund of the state of Oklahoma, in addition to the cash immediately available from the sale of the assets of said bank, and the cash arising from the proceeds of the assets of said bank since said

time and that said sum, so paid by the plaintiff exceeds the sum of one hundred thousand dollars and by reason thereof the state of Oklahoma for the use and benefit of the Banking Board and the Bank Commissioner thereof, as custodians and administrators of the depositors guaranty fund of the state of Oklahoma had title to and a first prior and superior lien upon all of the assets of said bank, including the additional liability against the stockholders, officers and directors thereof.

"4. It is further admitted that on the 11th day of December, 1909, the Planters' & Mechanics' Bank issued to the defendant, J. E. Ware, certificate numbered 128 of said date, for five shares of the capital stock of said bank, of the par value or face value of five hundred dollars.

"5. That on or about the first day of January, 1910, the defendant, J. E. Ware, sold, assigned and transferred the said certificate numbered 128 for the said five shares of the capital stock in the Planters' & Mechanics' Bank aforesaid to one J. M. Postelle, who was then and there a stockholder of the said Planters' & Mechanics' Bank, and said certificate of stock was by the said J. E. Ware assigned upon the back thereof in the blank provided for the purpose, witnessed by the said Nicholas M. Ellis, cashier of said bank, and delivered to the said Planters' & Mechanics' Bank and the officers thereof and particularly to the said Nicholas M. Ellis, cashier, whose duty it was to make transfers of stock on the books of said bank, and the said Ellis acting for said bank agreed to transfer the same, and afterwards told the defendant, J. E. Ware, that said stock had been so transferred on the books of said bank. That at the date of said transfer and delivery of said certificate, the said J. E. Ware received the sum of six hundred dollars for said stock, being the book value thereof as shown by the books of said bank. That prior to the date of said transfer and assignment of said certificate of stock, the said J. E. Ware was a director of said bank, and immediately upon the transfer notified the board of directors, and the president, cashier and other officers of said bank that he had sold said stock and was no longer a shareholder in said bank, and that he could no longer act as director therein, and thereupon the said J. E. Ware, defendant, ceased to act as such director and never thereafter participated in the said affairs of the said bank. That at the date of said transfer, to wit, about January 1, 1910, said Planters' & Mechanics' Bank was not insolvent and was not taken charge of by the Bank Commissioner of the state of Oklahoma until the date heretofore stated, to wit, April 6, 1911.

"6. It is further agreed that the said Nicholas M. Ellis and the officers of said bank, never actually canceled said surren-

dered certificates of stock, number 128, belonging to the defendant aforesaid, and never reissued any stock in lieu thereof, and that at the time of the insolvency of said bank, to wit, April 6, 1911, the said bank showed said certificate of stock in the name of the defendant J. E. Ware.

"7. It is further agreed that the by-laws of the said bank provides as follows: '5. The secretary shall keep a proper and correct record of any stock issued or canceled, showing the date of issue or cancellation, certificate number, owner, address, number of shares and amount. 6. The stock may be transferred or assigned only on the books of the bank; must be surrendered, canceled and new stock issued instead, in accordance with the banking laws.'

"And it is further agreed that said by-laws were in force at the time of the transfer and surrender for cancellation of the certificate of stock above described, originally owned by J. E. Ware.

"The question to be decided by the court, as under the agreed statement of facts above set out, are: (1) Whether the said action is barred by the statute of limitations, this action having been commenced on the 11th day of July, 1916; and (2) Whether, if not barred by the statute of limitations, the defendant, J. E. Ware, is liable in this action."

The two propositions involved in this appeal are thus stated by the Attorney General in his reply brief:

"Defendant in error discusses two propositions, the first being the statute of limitations and the second exoneration of defendant from liability as a stockholder, because of his attempted transfer of stock more than a year prior to the failure of the Planters' & Mechanics' Bank on April 6, 1911. If defendant is correct in his second proposition and the transfer of his stock was complete without the full compliance of the bank's by-laws and an actual transfer on the books of the bank then the statute of limitations is no longer a vital part of this appeal. However, we will discuss the propositions in the order presented by the defendant."

The first proposition, as to whether or not the statute of limitations runs against the state in this character of cases, is no longer an open question in this jurisdiction. It was held by this court in the case of State ex rel. Freeling, Atty. Gen., v. Smith et al., 77 Okla. 277, 188 Pac. 96, in the syllabus as follows:

"The statutes of limitations does not run against the state in an action on a promissory note held by the State Bank Commissioner as the assets of the insolvent bank," citing State ex rel. Taylor v. Cockrell, 27 Okla. 630, 112

Pac 1000; Lovett v. Lankford, 47 Okla. 12, 145 Pac. 767; Lankford v. P. I. W. Co., 235 U. S. 461; White v. State, 50 Okla. 97, 150 Pac. 716.

Concerning the second proposition, the Attorney General in his brief says:

"Sec. 294, R. L. 1910, provides that the shares 'shall be transferred on the books of the bank in such manner as the by-laws thereof may direct.' Section 6 of this bank's by-laws provides: 'The stock may be transferred or assigned only on the books of the bank; must be surrendered and canceled and new stock issued instead in accordance with the banking laws.' The whole question of liability of defendant in this case hinges on whether or not the terms of those by-laws must be fully complied with. On this question the authorities are divided.

"Defendant has cited the United States Supreme Court and the courts of Arkansas, Kentucky, and Tennessee to sustain his contention. Squarely in conflict with these views and in addition to the cases cited in the principal brief. we shall quote the Supreme Courts of Ohio, Maine, Massachusetts, and others. Oklahoma has never passed on the question presented here, where the defendant has made his efforts at transfer. We must look, then, to the reasons for the views of the defendant courts and adopt the holdings of those authorities which are most sound in reason."

The first authority cited in his reply brief by the Attorney General in support of his position is the decision of this court in the case of Blackert v. Lankford, 74 Oklahoma, 176 Pac. 532. An examination of that case discloses that it does not apply to the exact situation disclosed by the record in the instant case, but applies to what the situation in the instant case would be if it were sought to hold the transferee in the instant case, Postelle, liable as owner of the stock, and the record of the bank disclosed that the stock had been transferred to him.

The facts in the Blackert Case, supra, and the findings of Hooker, C., who wrote the opinion, as stated by him, were as follows:

"The evidence in this case discloses that Mr. Blackert, the plaintiff in error, was cashier, director, and stockholder in the Bank of Commerce of Geary. * * * It being conclusively shown by the books of the defunct bank that the plaintiff in error was the owner of 14 shares of the capital stock of said bank in his own name. * * * It is further shown that in December, 1910, several months before the bank in question was declared insolvent, an assessment of 60 per cent. was levied on the stock of the bank in order to repair the capital stock thereof; and that the plaintiff in error paid

a 60 per cent. assessment upon his stock, and contends here that he should be allowed a credit upon the amount sought to be recovered in this action by the payment then made by him. * * *" And that on the 4th day of May, 1911, the governing board of the bank entered into an agreement with the Bank Commissioner and whereas, it was found that a deficit of about $2,000 existed and that in consideration of the commissioner advancing the said sum from the guaranty fund, the directors pledged the assets of the bank, and agreed that the commissioner should proceed and collect the same in what may seem to be the most practical way, and that the capital being impaired, the examiner levied 100 per cent. assessment on all the stockholders of said Bank of Commerce to be paid as required by law, and that on the 5th day of May, 1911, the Bank Commissioner entered into an agreement with the American State Bank whereby in consideration of $36,321.04 in notes, and $25,065.48 in cash and other assets had, undertook to pay all depositors, both individual and certificate of deposits, cashiers' checks and rediscounts as shown by the daily statement of the books of the Bank of Commerce of Geary, it being expressly understood that the depositors were to be paid through the American State Bank of Geary.

In these circumstances it was held that the plaintiff, Blackert, was liable for the full statutory liability upon the stock held by him; paragraphs 5 and 6 of the syllabus being as follows:

"Where the capital stock of a banking corporation has become impaired, and an assessment against the stockholders is ordered, under Section 288, R. L. 1910, to enable the bank to continue business, the payment of such assessment and the resumption of the business by the bank does not in any manner affect or discharge the stockholders from their general statutory liability for the debts of the bank upon its subsequent insolvency. The latter liability is designed solely for the benefit of the creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full.

"Where an action is instituted by the Bank Commissioner of the state to recover the double liability imposed by section 265, R. L. 1910, as a general rule, all persons whose names are on the books of the bank, as the absolute owners of stock, are liable therefor, as parties dealing with the bank have a right to assume that the books of the bank show who are its stockholders, and as such stockholders they are bound for the liabilities of the bank in the manner provided by the statute, and if one knowingly permits his name to appear upon a stock book of the bank as a shareholder, he will be estopped, in favor of an action brought by the Bank Commissioner to collect the double liability, from denying liability."

The records in the case fully disclosed, both by the records of the bank and the entire record, that Blackert was the owner of the stock at the time the bank became insolvent, and knowingly permitted the bank records to show that he owned 14 shares of stock, and under the entire record there could be no doubt that he was liable under the statutes for the additional liability therein provided for, whereas, in the instant case one admittedly not the owner of the stock at the time the bank became insolvent is sought to be charged.

The exact proposition is thus stated in the reply brief of the Attorney General:

"Is this defendant, who was the stockholder of record in the bank, who had sold his stock and delivered the same to the cashier of the bank for cancellation and issuance of new stock and who was promised by the cashier that he would transfer it, and who was afterwards told by the cashier that it had been transferred, exonerated from his liability as stockholder?"

And, as before shown, he states in his brief:

"Oklahoma has never passed upon the question presented here, where the defendant has made his efforts at transfer"

—and cites in his brief the decisions of the courts of last resort of the following states supporting the contention that the defendant is liable, to wit: Stanley v. Stanley, 26 Maine, 191; Hurlburt v. Arthur (Cal.) 73 Pac. 734; Spreckles v. Nevada Bank, 113 Cal. 277, 45 Pac. 329; MaGruder v. Coltson, 44 Md. 537, 22 Am. Rep. 47; also cases from Illinois, Massachusetts, New York, Louisiana, Minnesota, Indiana, Ohio, and Kansas.

In the case of Fisher v. Essex Bank, 5 Gray, 373, the Supreme Court of Massachusetts stated in the syllabus as follows:

"Shares in a bank, whose charter provides that they shall "be transferable only at its banking house and on its books cannot be effectively transferred as against a creditor of the vendor, who attaches them without notice of any transfer, by a delivery of the certificates thereof, together with an assignment and blank power of attorney from the vendor to the vendee, even if notice of such transfer be given to the bank before the attachment."

The opinion in part says:

"It is necessary to fix some act, and some point of time, at which the property changes and vests in the vendee; and it will tend to the security of all parties concerned, to make that turning point consist in an act which, whilst it may be easily proved, does at the same time give notoriety to the transfer. It would seem to us to be going beyond

the rules of just exposition, to hold that a plain provision, of a statute law, calculated to promote the security of important legal rights of parties in important particulars, should be construed to be a regulation made for the convenience and protection of banks. The clause itself is too clear to admit of doubt: 'Shall be transferable only;' that is capable of being transferred; the largest and broadest term to express 'alienation on one part, and acquisition on the other; and the word 'only' carries an implication as strong as negative words could make it; that is, in no other mode. It was not to prescribe one mode, leaving others unaffected; it made the mode exclusive."

"Nor is this position without high authority to support it. In Union Bank v. Laird, 2 Wheat. 390, it was held by the Supreme Court of the United States that where shares were, by the act of incorporation, made transferable on the books, no person could acquire a legal title in any other mode."

In Abilene State Bank v. Strachan, 89 Kan. 577, 132 Pac. 200, the syllabus is as follows:

"No. 1. Bank Stock—Assigned—not transferred on Stock Book—Shareholder Liable. To effect an assignment and disposition of shares of capital stock in a bank so as to relieve the assignor from the superadded liability of shareholders fixed by law he must procure a transfer of the stock on the books of the bank in accordance with the provisions of the banking act.

"No. 2.—Same. Such a transfer is essential to a release from liability of a shareholder who sells and assigns his stock, to the bank itself in payment of a previously contracted debt owing by him to the bank."

In Harpold v. Stobart, 21 N. E. 637, the Supreme Court of Ohio stated as follows:

"Where, in such case, the vendor causes an entry of transfer to be made by the secretary of the company, in a book then present at the company's office other than the stock book, with the expectation that it will be entered in another book than at the residence of the secretary, but no transfer is made in the stock book of the company, and at the time of the accruing of the debts of the corporation and at the time of the trial, such vendor appears, by the stock book, to be the owner of the shares, such entry of transfer is not sufficient to relieve the vendor of liability to the creditors of the corporation, notwithstanding the fact that the sale was made in good faith and for value, and that the vendor believed he had done all that was necessary to effect a transfer of the stock, and the further fact that the company thereafter treated the purchaser as the owner of the stock so sold. * * *

"The creditors have the right to resort to and rely upon the proper book of the company as showing who the stockholders are, and

the amount of stock held by each, and they are presumed to have relied upon the record so found in this case. * * * And, where the name of an actual stockholder appears upon that book as owning a given number of shares, the entry is presumed to have been made with his consent; at least, this is so where it was correct when made, and, as between him and creditors of the corporation, he is estopped to contradict the record, or deny ownership of the shares."

Counsel for defendant submit in their brief, in support of their contention, the following:

"It is admitted that the defendant did transfer these certificates of stock to one J. M. Postelle; that the transfer was made at a time when the bank was solvent, and more than a year before it became insolvent; that Ware received the sum of six hundred dollars for the transfer and assignment of the five hundred dollars worth of stock; that he indorsed the certificates evidencing the ownership of this stock to the said J. M. Postelle, signed the same and delivered it to the cashier of the bank for cancellation, and the issuance of new stock to the said Postelle; that the bank cashier, Mr. Ellis, said he would transfer it, and that he afterwards stated to the said Ware that he had transferred it, all of which took place long prior to the insolvency of said bank. We think after a careful reading of the brief of the plaintiff in error, that no case cited by him has any facts which are so strong, either in law or in equity, in favor of the defendant as the case at bar. Conceding, for the sake of argument, that the transferor or seller of the stock is put upon inquiry to know whether the stock surrendered has been actually canceled, which we do not admit, still when the transferor of the stock has delivered the certificates to the proper officer of the bank for cancellation, has been told that it would be canceled, has made inquiry and been told that it has been canceled, human ingenuity could go no further to accomplish exoneration from double liability in case of insolvency of the bank thereafter. However, we think the decisions cited by the plaintiff in error are against the great weight of authority, and that the rule announced by the Supreme Court of the United States in cases of this kind, as affecting the liability of owners of stock in national banks, is the correct rule, and is supported by sound reason and by the adjudicated cases in a majority of the states. The Supreme Court of the United States declared the rule to be as follows:

"'Upon a reasonable construction of the statute imposing liability upon shareholders for the debts of national banks, and for all the objects intended to be accomplished by the provisions imposing liability of shareholders for the debts of national banks, the responsibility of the defendants ceased upon the surrender of certain stock certificates to the bank, and the delivery to its president

of a power of attorney sufficient to effect, and intended to effect as the officer knew, a transfer of the stock on the books of the association to the purchaser; although such transfer was not in fact made.' Whitney v. Butler, 30 L. Ed. 266. In the body of the case it is said: 'The right to have the transfer made, and thereby secure exemption from further responsibility, was secured to the defendants both by the statute and by the by-laws of the bank. They did all that was required by either as preliminary to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary formal entries on its books. If, when the agents of defendant delivered the certificates and power of attorney to the president of the bank, the latter had given any intimation of a purpose not to make the transfer promptly, or had avowed an intention to postpone action until a sufficient amount of stock was obtained to fill Coburn's order, it may be that the failure of the defendant to take legal steps to compel a transfer would, in favor of the creditors of the bank, have been deemed a waiver of the right to an immediate transfer on the stock register. But no such intimation was given; no such avowal was made. No objection was made to the power of attorney or to the discharge of the defendants from liability. So far as the record shows, nothing was done by the bank's officers to raise a doubt in the minds of the defendants' agents that the transfer would be made at once. * * * Their conduct was, under all the circumstances, that of careful, prudent business men, and it would be a harsh interpretation of their acts to hold (in the language in some of the cases when considering the general question under a different state of facts) that they allowed or permitted the name of Whitney to remain on the stock register as a shareholder.' See, also, Earle v. Carson, 188 U. S. 42, 47 L. Ed. 373. In this case the doctrine was extended so as to exempt a stockholder from liability, even though both the bank and the purchaser were insolvent when the sale was made, there being no fraud in the transaction. The Supreme Court of Kentucky has followed the same rule. Bracken v. Nicol, 99 S. W. 920, L. R. A. (N. S.) 11, p. 818. The Court of Appeals of Kentucky says, in concluding, in the case last above cited: 'And so we hold that a shareholder in a corporation, although he may be a director, who in perfect good faith, and under circumstances free from any suspicion of fraud, or a desire to escape liability, sells his stock, and does everything he honestly believes is necessary to make it effective, and that a prudent business man should do, and who requests the officers in active charge of the corporation, and who have control of its books in making the transfer, to do everything that is necessary to perfect it in a legal way, and is informed by them that there is nothing more to be done, will be relieved from future liability as a

shareholder.' In Weakley v. McClarly, 125 S. W. 265, the Court of Appeals of Kentucky followed the same rule, and cited as authority therefor: Bracken v. Nicoll, supra; Whitney v. Butler, supra; Matteson v. Dent, 176 U. S. 521, 44 L. Ed. 571, as precedents, so that this has become the settled rule of construction in Kentucky. In Warren v. Nix, 135 S. W. 896, the Supreme Court of Arkansas passed upon the precise question involved and held in the seventh and eighth syllabi as follows: 'Under Kirby's Dig. sec. 849, providing that a certificate of transfer of stock in any corporation organized under that chapter must be promptly filed in the county clerk's office, in order to avoid liability for the debts of the seller, where a stockholder in a bank in good faith sold his stock, and executed and delivered all the necessary instruments to allow transfer of the stock on the bank's books, and placed the same in the hands of the proper bank official, the mere fact that no certificates of the transfer were filed with the county clerk will not render him liable as a stockholder on the subsequent insolvency of the bank; the filing of such certificate being the duty of the transferee. Nor will the failure of the bank officers to make the transfer on the books of the bank continue the seller's liability as a stockholder.' This case elaborately considers and discusses the legal propositions involved, and cites the cases which we have heretofore cited in this brief, and also the following: Tucker v. Gilman, 121 N. Y. 189, 24 N. E. 302; Harper v. Carroll, 66 Minn. 487, 69 N. W. 610; Miller v. Great Republic Ins. Co., 50 Mo. 55; Cox v. Elmendorf, 97 Tenn. 518, 37 S. W. 387; Foster v. Broas, 120 Mich, 1, 79 N.W.696. In the case of Foster v. Broas et al. above cited, 79 N. W. 696, the court held in the seventh syllabus, that a stockholder who transfers his stock to the cashier, and was assured by the cashier that he would give him credit for the amount of the stock, that notwithstanding the cashier had never transferred the stock on the books, that the sale was complete and the stockholder released from liability. In the tenth syllabus the court specifically holds that the fact that the shares were transferable on the bank's books did not limit the right of transfer so as to justify its refusal to enter the transfer. The court justifies its conclusion in this case, and cites the leading case in the United States, Whitney v. Butler, supra. The opinion just cited, on page 703 of 79 N. W., recites facts very similar to those in the case at bar. * * * The case of Cox v. Elmendorf, above cited, was decided by the Supreme Court of Tennessee in 1896, and the court in that case held squarely that there was no liability under facts similar to those admitted in the case at bar. The syllabus in that case is as follows: 'Defendant, who was the owner of stock in a national bank, which, under its by-laws, was transferable only on the books of the bank, sold the same, and

after executing a written assignment to the purchaser, and a power of attorney in blank to make the transfer, indorsed on her certificate of stock, delivered the certificate to the president of the bank, who promised to make the proper transfer on its books, but failed to do so, though the certificate was thereafter treated and used by the bank as the property of the purchaser. The bank subsequently became insolvent, and the receiver brought an action against defendant to recover an assessment made on the stock. Held, that defendant having done in good faith all that a prudent person would be required to do towards the transfer of the stock, could not be held liable as a stockholder.' The Supreme Court of Tennessee followed the doctrine announced in the earlier case of Green v. Ashe, 172 S. W. 293. This case discusses the principles involved quite elaborately. * * * It cites, in addition to the cases already cited here, the case of Corn v. Skillern, 75 Ark. 148, 87 S. W. 142. In Bank of Midland et al. v. Harris, reported in 170 S. W. 67, the Supreme Court of Arkansas uses the following language in the fifth syllabus preceding said opinion: 'Under Kirby's Dig. sec. 1990, making bank stockholders liable for public funds deposited and not paid on demand, a transfer of stock, though not recorded on the books of the corporation because the transferee was not then, but was to become, the proper transfer officer, was effectual to sever the relation of stockholder, if the transfer was made honestly and in good faith, and to relieve of liability for future deposits.' At the time of the insolvency of the Planters' & Mechanics' Bank the law regulating the transfer of stock of an incorporated bank was expressed in section 38, found at page 138 of the 1907-8 Session Laws, which reads as follows: 'Sec. 38. The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws therefor may direct, but no transfer of stock shall be valid against a bank or any creditor thereof so long as the registered holder thereof shall be liable as a principal debtor, surety or otherwise to the bank for any debt, nor in such cases shall any dividend, interest or profits be paid on such stock so long as such liabilities continue, but all such dividends, interest or profits shall be retained by the bank and applied to the discharge of such liabilities, and no stock shall be transferred on the books of any bank where the registered holder thereof, is in debt to the bank for any matured and unpaid obligation."

The National Bank Act, approved June 3, 1864, ch. 343, 18 Stat. 123, R. S. 5139, Barnes Fed, Code, sec. 9167, contained the same provision as Revised Laws 1910, sec. 294, supra, that shares of stock shall be deemed to be personal property and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of the association.

George E. Earle, Jr., Receiver of Chestnut St. National Bank, v. Susan Carson, 188 U. S. 42, 47 L. Ed. 373, was a case construing the Federal Statute, where the facts and the proceedings in the district court, as stated by White, J., were as follows:

"When the Chestnut Street National Bank of Philadelphia suspended payment and its doors were closed, there stood on the stock register ten shares in the name of the defendant in error. A call having been made by the Comptroller for the sum of the double liability, this suit was commenced to recover the amount. The defense was: First, that prior to the suspension of the bank, the defendant had, in good faith, sold the stock standing in her name for a full market price, which had been paid her; second, that in consummation of such sale, she had, by her agent, delivered to the proper officer of the bank in its banking house, at the place where transfers were made, the stock certificate with an adequate power of attorney to make the transfer, and requested that the stock be transferred; third, that the officer of the bank said that the transfer could be made as requested, and the defendant was ignorant of the fact that the officer had failed to discharge his duty; fourth, that, as the defendant had done everything which the law required her to do to secure the transfer, she had ceased to be a stockholder, and was not responsible. In submitting the case to the jury the court instructed: First, that the presence of the name of the defendant on the stock register created a presumption of liability. This, however, the jury was informed, was not conclusive, but might be rebutted. Such rebuttal, the court charges, would result, if it was proved that the defendant had made a bona fide sale of her stock, and had, at the proper time and place, handed to the proper officer of the bank a power to transfer the same, although the officer of the bank had neglected to fulfill his duty in the premises. Second, after charging fully and and accurately as to the proof essential to show a bona fide sale of stock in the national bank, the court having, during the trial, applied a like rule in passing on the admissibility of evidence, instructed the jury if the evidence established that a sale of such character had been made while the bank was a going concern, the defendant would not be liable because, unknown to her, the bank was, at the time of the sale, in fact insolvent. And the same principle was applied to the unknown insolvency of the person to whom the stock was sold. There was a verdict and judgment for the defendant, which was affirmed by the Circuit Court of Appeals; thereupon this writ of error was prosecuted."

The learned Justice passing upon this case, reviewing the action of the trial court, in the body of the opinion said:

"The correctness of this ruling is not open to controversy."

Syllabus, paragraph 1, of the opinion is as follows:

"The presumption of liability for an assessment on shares of stock in an insolvent national bank, arising from the presence of a person's name on the stock register, is rebutted by evidence that a bona fide sale of the stock had been made, and that the vendor had performed every duty which the law imposed in order to secure the transfer on the registry of the bank."

To the same effect was the opinion by Harlan, J., in the case of Caroline J. Whitney et al. v. Peter Butler, Receiver, 118 U. S. 655, 30 L. Ed. 266; the facts in that case being very similar to the facts in the instant case, and the syllabus being as follows:

"Upon a reasonable construction of the statute imposing liability upon shareholders for the debts of national banks, and for all the objects intended to be accomplished by the provision imposing liability of shareholders for the debts of national banks the responsibility of the defendants ceased upon the surrender of certain stock certificates to the bank and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock on the books of the association to the purchaser, although such transfer was not, in fact, made."

As we have seen the courts of last resort of many of the states named have so held.

We think, upon review of the whole case, that the decision of the lower court was right, and should be affirmed, because, under the facts as agreed upon and admitted, and upon which alone this case is to be decided, the defendant in error, Ware, when he had sold the stock, indorsed the certificate, surrendered it for cancellation to the cashier of the bank, and upon inquiry thereafter had been informed by the officer of the bank having the books in charge that it had been so transferred, was thereafter exonerated from any future liability.

The judgment of the trial court is therefore affirmed.

HARRISON, C.J., and MILLER, ELTING, and KENNAMER, JJ., concur.