STEWART et al v. ALLISON*
(No. 1315; March 16, 1927; 254 Pac. 117.)

BANKS AND BANKING—STOCKHOLDERS' LIABILITY—WHEN TRANSFER RELIEVES FROM LIABILITY—FRAUD AS AN ELEMENT IN TRANSFER BEFORE CLOSING OF BANK.

1. One transferring stock in insolvent bank to escape liability as stockholder, under Comp. St. 1920, §5186, prior to enactment of Laws 1925, c. 157, § 87, knowing or believing, or being in such position that he should know or believe, that corporation was insolvent, is liable for assessment to pay creditors, but his liability ceases on bona fide transfer of stock in going bank.

2. Transfer of stock by retiring president of bank, who had paid two assessments of 100 per cent. and 50 per cent., respectively, to cashier, who was responsible person, *held* to relieve transferor of liability for assessment, under Comp. St. 1920, § 5186, after bank's insolvency, Laws 1925, c. 157, § 87, not having been enacted, though cashier failed to transfer stock on books to himself as agreed, and it was subsequently transferred to persons not financially responsible, no showing of fraud being made.

3. In suit to enforce stockholder's liability, under Comp. St. 1920, § 5186, prior to enactment of Laws 1925, c. 157, § 87, against one who had transferred stock before bank closed, plaintiffs must fail unless they prove fraud on part of transferor.

*See Headnotes  (1) 7 CJ p. 504 n. 87; p. 506 n. 1.  (2) 7 CJ p. 506 n. 2, 3; 14 CJ p. 1021 n. 34.  (3) 7 CJ p. 506 n. 1.

Appeal from District Court, Campbell County; James H. Burgess, Judge.

Action by J. A. Stewart and others against J. A. Allison. Judgment for defendant, and plaintiffs appeal.

*E. C. Raymond, R. G. Diefenderfer* and *W. K. Somers,* for appellants.

The stock was sold by Allison through his agent Shields to irresponsible people, at a time when the bank was insolvent to the knowledge of Allison; this did not relieve him of liability; Banta v. Hubbell, 150 S. W. 1089. The only transfer on the books is from Allison to the Nelsons and Hume, indicating that Shields was a mere agent; actual intent to defraud is unnecessary if the effect of the act is to defraud; National Carriage Mfg. Co. v. Story, 44 P. 157; Welch v. Sargent, 59 p. 319; Northwestern Trust Co. v. Bradbury, 134 N. W. 513; Richmond v. Irons, 121 U. S. 7; McConey v. Co., 106 N. W. 901. It was unnecessary that the insolvency of the purchaser be known to vendor; McDonald v. Dewey, 26 S. C. R. 734. If transfer was to corporation, it was a fraud on creditors; Sherrill v. Hutson, 65 S. 539; Hall v. Co., 2 L. R. A. (N. S.) 130; Atlanta Ass'n. v. Smith, 123 N. W. 106; Bank v. Case, 99 U. S. 628. The voluntary assessment paid by Allison does not excuse him from liability; Delano v. Butler, 118 U. S. 634, and cases cited. Where a transfer is void, the stockholder remains such; Gillette v. Trust Co., 82 N. E. 891; Savings Bank v. Richard, 73 P. 858. This action, brought under 5595 C. S., is for the creditors who are all before the court; those who were creditors at the time of the transfer can recover.

*C. A. Kutcher,* for respondent.

The record does not contain all of the evidence; the cause should be affirmed upon the portions of the record before the court; France v. Bank, 3 Wyo. 187; Callahan v. Houck, (Wyo.) 83 P. 372. Allison paid an assessment

of $50.00 per share and assigned his stock to Shields, cashier, for sale under a guaranty that he would not be called upon for stock contributions to save the bank; he also resigned as a director; he practiced no fraud upon creditors; no fraud was proven; the insolvency of the bank, at the time of the transfer, was not proven; Blyth & Fargo Co. v. Kestor, 97 P. 927. A transfer in good faith cannot be attacked even if the bank was insolvent at the time. 3 R. C. L. 407. The evidence shows that Shields was responsible at the time of transfer; this precludes an action by creditors against transferor; 14 C. J. 1021; Mc Donald v. Dewey, 50 L. Ed. 1128. The limit of liability would be debts of the bank; at the time of transfer, and on this point there was no evidence; 3 R. C. L. 406. Allison contributed $7,250.00 for which he received nothing; how could this defraud the creditors? The transfer to Shields was legitimate.

*E. C. Raymond, R. G. Diefenderfer* and *W. K. Somers,* in reply.

The case was presented on the record in the Collins case, and the point suggested that the record herein is incomplete is not well taken; the pleadings stated that the sale was made to Hume and the Nelsons; the testimony about transfer to Shields was immaterial under the pleadings; likewise the financial responsibility of Shields was immaterial.

Before Potter, Justice, and Tidball and Brown, District Judges.

Tidball, District Judge.

In this case, the plaintiffs are suing as creditors of the defunct Peoples Bank of Moorcroft for themselves and all other creditors of the bank. The defendant was a stockholder in that bank, owning twenty-nine shares of stock, and the suit is to enforce payment against the defendant under Section 5186, W. C. S. 1920. By the suit,

the plaintiffs seek to recover for themselves and the other creditors of the bank the sum of $2900, with interest, being the par value of the stock held by defendant.

The plaintiffs allege that on October 15th, 1921, the bank was insolvent and had been insolvent for some time prior to that date and continued to be insolvent during all times thereafter; that on October 28th, 1921, the bank was closed by the State Bank Examiner, and that proceedings were had whereby, on December 5th, 1921, the District Court made an order declaring the corporation insolvent, continuing the receivership, and perpetually closing the corporation and enjoining it from further proceeding with its business; that the liabilities of the bank to its creditors, after the sale of all assets of the bank, were in excess of $100,000 and in excess of the stock of the bank.

The section of the statute under which the action was brought provided:

"The shareholders of each and every banking association, savings bank, and loan and trust company or association, organized under the provisions of this chapter shall be held individually responsible, equally and ratably and not one for another, for all contracts, debts and engagements of such company or association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such stock."

This section has since been repealed and a new section re-enacted as Sec. 87, Ch. 157, S. L. 1925. However, this latter chapter does not apply to the case at bar, the suit in question antedating the law of 1925.

It appears from the evidence that prior to the 6th day of August, 1921, the defendant Allison owned twenty-nine shares of the capital stock of the bank, of the par value of $2900, for which he had paid the full sum of $2900; that on the 6th day of August, 1921, a proceeding was had

whereby all the stockholders in said bank, in order to take up bad paper held by the bank, turned in their shares of stock in the bank and had them cancelled, and on said date new stock in the same amount as theretofore held by the stockholders was issued to them and they paid the full par value thereof, so that on the 6th day of August, 1921, the defendant Allison surrendered his twenty-nine shares of stock for which he had paid $2900 and received a new certificate for twenty-nine shares, for which he paid $2900 in cash into the bank. At the same time that the defendant took out the twenty-nine new shares of stock and paid in $2900, he was elected a director and president of the bank. At that time, the State Bank Examiner and other persons interested in the bank held a meeting in the bank and the arrangement of cancelling the old stock and buying new stock was carried out, pursuant to the suggestion of the State Bank Examiner and the other parties interested in the bank, and, according to the testimony, it was believed at that time that this reorganization placed the bank in a sound and solvent condition, and to show his faith in the solvency of the bank at that time the State Bank Examiner deposited $300 therein. The action taken on August 6th, 1921, was controlled and supervised by the State Bank Examiner and was apparently approved by him.

The bank continued to function thereafter, and on September 30th, 1921, High Shields, who was then the cashier of the bank, went to Gillette, where defendant resided, and advised him, as well as two other stockholders, to-wit: Maycok and Keeline; that there was still some doubtful paper in the bank which should be taken care of. Shields then proposed to defendant and the other stockholders present that they should pay into the bank an amount equal to fifty dollars per share on the stock held by them in order to absorb this doubtful paper, and that they should also transfer and turn over to Shields their stock and that he would assume all further respon-

sibility on the doubtful paper. After some discussion this proposition was accepted by Allison, and he thereupon paid into the bank the further sum of $1450 in cash and endorsed his certificate of stock and turned it over to Shields, and at the same time Shields agreed to cancel it on the books of the bank. At the same time Allison tendered his written resignation as president of the bank. This resignation, however, appears not to have been formally accepted by the bank until October 15th, 1921, when the bank was again reorganized, and at that time the stock which the defendant had turned over to Shields was transferred on the books of the bank to E. P. Hume, G. P. Nelson and Everett Nelson. It is alleged in the petition, and the evidence seems to show, that Hume, G. P. Nelson and Everett Nelson were not financially responsible at the time of the transfer. The evidence further shows that at the time defendant turned his stock over to Shields and gave him the $1450 in cash, Shields told Allison that this would take care of the paper that was doubtful, and the evidence shows that at that time Shields was financially responsible.

According to the testimony of the defendant Allison, he supposed that his stock certificate was cancelled at the time he turned it over to Shields on September 30th, 1921, and having on said date sent in his written resignation as president and director of the bank and believing that he was no longer a stockholder in the bank, he took no further interest in any of the affairs of the bank.

After the reorganization of the bank on October 15th, 1921, the bank apparently failed to prosper, so that on October 28th, 1921, as hereinbefore stated, the bank became insolvent and was closed by the State Bank Examiner.

It is contended by counsel for the plaintiffs that Allison never transferred his stock to Shields, and, the stock having finally been transferred to Hume and the Nelsons, who were not financially responsible, that Allison is still

liable as a stockholder of the bank, the plaintiffs contending that the stock was transferred by Allison for the purpose of escaping his liability as a stockholder. The law is undoubtedly well settled that where one transfers stock in an insolvent corporation, knowing or believing, or being in such position that he should know or believe that at the time of the transfer the corporation is insolvent, and where he makes the transfer for the purpose of escaping liability as a shareholder, he is still liable for his assessment to pay the creditors of the corporation. 3 R. C. L. 405, and cases cited. 7. C. J. 507, Sec. 72.

However, the law is equally well settled that one may transfer his stock in a going bank and that upon the completion of such transfer, if made in good faith, his liability ceases. 3 R. C. L. 407, and cases cited. 7 C. J. 504, and cases cited. Foster v. Row 120 (Mich.) 1, 79 N. W. 696, 77 A. S. R. 565.

The failure of Shields to transfer the stock on the books of the bank to himself as he had agreed with defendant to do would not render the defendant liable, the defendant having endorsed the stock and delivered it to Shields under the agreement with Shields to transfer the stock. 7 C. J. 506, Sec. 73; Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61 30 L Ed. 266; Bracken v. Nicol, 124 Ky. 628 99 S. W. 920, 14 Ann. Cas. 896, 11 L. R. A. (N. S.) 818. State ex rel Freeling v. Ware, 82 Okl. 130, 198 Pac. 859, 45 A. L. R. 127. This is especially true where the transfer is made to one financially responsible, as was done in this case, the evidence showing Shields to have been financially responsible at the time of the transfer. 14 C. J. 1021, Sec. 1583. Mc Donald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419.

We think, in this case, when the whole evidence is considered, including Allison's letter of resignation of September 30th, 1921, there can be no question that Shields acquired the ownership of Allison's stock on September

30th, 1921, and the evidence showing that Shields at that time was a man of financial responsibility, Allison's liability ceased. The mere fact that Shields may have failed to do his duty in transferring the stock on the books of the corporation would not make Allison liable. He endorsed his stock and delivered it to Shields, who was the cashier of the bank, with the understanding that his stock would be cancelled and reissued to Shields. Having done this, we think that clearly, under the decisions, he would not be responsible as a stockholder. The position of Allison that his transfer to Shields was bona fide and was not done with the intention of escaping liability is strengthened by his letter of resignation as president and director of the bank at that time, and also by the fact that on August 6th, 1921, Allison submitted to a one hundred percent assessment on the stock held by him, and later, on October 15th, 1921, submitted to a further fifty percent assessment on his stock, with the understanding with Shields, who was at that time financially responsible, that Shields would take care of the bad paper in the bank.

The evidence fails to show any cancellation of Allison's stock on October 15th, 1921. Apparently the books of the bank fail to show just how the transfer to Hume and the Nelsons was effected. However, we do not think that it would make any difference whether the Allison stock was first transferred on the books to Shields and then to the three parties in question, or whether the Allison certificate was surrendered by Shields and cancelled and new stock issued directly to Hume and the Nelsons.

We think, under the circumstances as above outlined, that the plaintiffs failed to prove any fraud on the part of Allison in his transfer of this stock, and, without proving fraud, the plaintiffs must fail.

The judgment of the District Court was a general finding and judgment in favor of Allison. We are not informed by that judgment as to what reasons the District

Court had for this finding and judgment. However, we believe that the conclusion reached by the District Court was correct and should be affirmed.

*Judgment affirmed.*

POTTER, J., and BROWN, District Judge, concur.