BAIRD, Appellant, v. HEBAL, Respondent.

(229 N. W. 308.)

(File No. 6859.   Opinion filed February 21, 1930.)

*O'Keeffe & Stephens,* of Pierre, for Appellant.
*Law, Dobie & Law,* of Clear Lake, for Respondent.

BROWN, P. J. In 1920, T. M. Antony was president of Slope County State Bank of Amidon, N. D., hereinafter designated the Amidon Bank, and was also vice president of Bankers' Farm Mortgage Company of St. Paul, Minn., and resided at St. Paul. The company controlled a number of banks in Minnesota and North Dakota. Defendant Hebal resided at Goodwin, S. D., and was the owner of 10 shares of stock in Amidon bank of the par value of $100 per share evidenced by two certificates for 5 shares each. Bankers' Farm Mortgage Company at that time also owned or controlled most of the remaining shares in the Amidon Bank, which were carried in the names of officers of the company. In April, 1920, defendant was advised by the company by letter that it was about to sell the Amidon Bank to Murphy and Delaney at $162.00 per share, including defendant's shares if he wished to sell, but that they would have to guarantee $10,000 of the paper of the Amidon Bank. In exchange for his shares in the Amidon Bank the company offered him 10 shares in First National Bank of Taylor, N. D., of the book value of $125 a share, the difference of $37 a share to be left temporarily in a fund to take care of any losses there might be on the Amidon paper. The letter stated: "If they have another (crop) failure out there some big losses would no doubt be taken." Inclosed was the purchase agreement with Murphy and Delaney and the guaranty of the $10,000 paper of Amidon Bank. Defendant accepted the offer and signed the blank printed form of assignment on the back of his certificates, and transmitted the certificates and other papers to Antony at St. Paul by letter, and testified that the letter contained a direction for An-

ony to see that proper transfer of his shares was made in the books of the Amidon Bank. While no vendee was named in the assignment, defendant testified that he sold his shares to Bankers' Farm Mortgage Company, and the secretary-treasurer of that company, who was his son-in-law testified that the Bankers' Farm Mortgage Company was the purchaser of defendant's 10 shares in the Amidon Bank. Defendants' shares were received at the office of the Bankers' Farm Mortgage Company, but no transfer of them was ever made on the books of the Amidon Bank. A son of defendant was cashier of Amidon Bank at the time, but defendant neither notified him nor the bank of the sale of his shares. Antony died on May 16, 1920, and on June 1st of that year defendant received from Bankers' Farm Mortgage Company a certificate for 10 shares of the First National Bank of Taylor. On June 22, 1920, the Amidon Bank, pursuant to law, filed with the state banking department of North Dakota a list of its stockholders, verified by J. J. Murphy, president of the bank, and by defendant's son, as cashier of the bank, in which defendant was listed as the owner of 10 shares of the bank's stock. This list showed the transfer on April 23, 1920, of 80 shares of the stock from officers of the Bankers' Farm Mortgage Company to Murphy and Delaney and their associates, leaving $1,000 in the name of defendant and $1,000 in the name of E. R. Hebal, his son, cashier of the bank, the total capital of the bank being $10,000 divided into 100 shares of $100 each. Bankers' Farm Mortgage Company retained possession of defendant's two certificates of 10 shares in the Amidon Bank until November 10, 1920, when they surrendered them with other papers and some cash to Murphy and his associates in satisfaction of the guaranty of the $10,000 of Amidon Bank paper. By the middle of June, 1920, the officers of the Bankers' Farm Mortgage Company knew "there was going to be a complete failure at Amidon."

On June 8, 1921, Amidon Bank suspended and was taken in charge by plaintiff as receiver, under the laws of North Dakota. Its liabilities closely approximated $300,000, while the actual value of its assets did not exceed $12,000, and the receiver, as required by the Laws of North Dakota, commenced action against the stock holders to recover the amount of their double liability. In this action the trial court found that defendant was not a stock-

holder at any time within a year next preceding the failure of the bank, and that, while defendant's stock had not been transferred in any manner on the books of the bank, he had nevertheless used such means as an ordinarily prudent person would have used, to have the transfer of his shares to Bankers' Farm Mortgage Company entered upon the books of the Amidon Bank, and that therefore he was not liable for the double liability. From a judgment in accordance with this finding, and from an order denying a new trial, plaintiff appeals.

The single question for our determination is whether or not, on the facts stated, defendant is liable for the superadded liability of a stockholder in the Amidon Bank.

Except, as he claims, that in his letter transmitting his certificates, he instructed Antony to see that the proper transfer of his shares was made in the books of the Amidon Bank, defendant took no steps to have the transfer made. It does not appear that Antony ever promised to comply with the request.

Compiled Laws of North Dakota 1913, § 5160, provides that shares of bank stock shall be "transferable on the books of the association in such manner as may be prescribed by the by-laws or articles of such associations." And section 5168 provides that shareholders shall be individually liable for all debts of the bank to the amount of their stock at par value, in addition to the amount invested therein, and that such liability shall continue for one year after any transfer or sale of stock by any stockholder. No by-laws on the subject had been adopted by the Amidon Bank, but testmiony on behalf of plaintiff showed that the usual manner of keeping the record of the transfer of shares in state banks throughout North Dakota was by surrender of the certificate to the bank, attaching it to its stub in the stock certificate bound book, and making a notation on the stub of the transfer and issuing a new certificate to the transferee, and that the Amidon Bank kept a record of transfers of its stock in this manner. Defendant's contention that, no provision of the by-laws or articles of incorporation prescribing the manner of transfer on the books of the bank having been proved, the statutory requirement of a transfer on the books of a bank is done away with, is clearly not maintainable. The statute requires a record of a stock transfer to be made in some book kept by the bank for the purpose, irrespective of whether or

not by-laws on the subject have been adopted, and the record of the facts showing the transfer, made on the stub in the stock certificate book, meets the requirements of the statute.

Some courts hold that the provision that shares of stock shall be trasferable on the books of the bank means that nothing short of a transfer on the books can relieve the vendor from the superadded liability, or affect the rights of the bank, its creditors, or the public. Faulkner v. Bank of Topeka, 77 Kan. 385, 94 P. 153; Abilene State Bank v. Strachan, 89 Kan., 577, 132 P. 200, 46 L. R. A. (N. S.) 668; Parker v. Brumder, 187 Wis. 75, 203 N. W. 941.

Others hold that, when the vendor has delivered his certificates to the proper officer of the bank for cancellation, and requested that the proper entry of the transfer be made on the books of the bank, has been assured that this would be done, and on inquiry made shortly afterward is told by the officer of the bank that the transfer has been made on the books, he has done all that can be expected of a reasonably prudent person, and is not thereafter to be regarded as a stockholder, although the transfer has not in fact been made on the books of the bank. State v. Ware, 82 Okl. 130, 198 P. 859, 45 A. L. R. 127. Defendant contends that he has brought himself within this rule. But with this we cannot agree. We do not think that defendant's direction to the purchaser of his shares, to see that the proper transfer was made on the books of the bank, can relieve him from liability as a stockholder, where the transfer was not so made and nothing was done by him to see that it was made, except giving a direction or making a request of his purchaser to see that it was done. While Antony was president of Amidon Bank, it was not in his capacity as an officer of the bank that he was receiving the certificates; he was receiving them on behalf of the Bankers' Farm Mortgage Company for whom he was purchasing them and to whom defendant himself testified he sold them. Antony would not have the custody of the books of the bank in St. Paul. Those books, including the stock certificate book, on which the transfer should be made, were in the bank at Amidon, and the most that can be said in regard to Antony's relation to the transaction is that defendant made him his agent to see that the transfer on the books was effected. Antony's failure to do this was the failure of defendant's

own agent, and defendant cannot escape liability because of the failure of his own agent to carry out a. direction which he had given him. For the default of the agent, the principal, and not the creditors of the bank, must bear the consequences. Schofield v. Twining (C. C.) 127 F. 486. See note on this subject, 45 A. L. R. pages 154 to 158, inclusive. We think the evidence fails to jutify the finding of the trial court that "defendant used such means as an ordinarily prudent man would have used under like circumstances to have the transfer of his shares of stock to the Bankers' Farm Mortgage Company entered upon the books" of the Amidon Bank.

The judgment and order appealed from are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.