LOVETT *et al., Creek County Com'rs,* v. LANKFORD *et al.*

No. 6059.   Opinion Filed September 29, 1914.

Rehearing Denied January 9, 1915.

(145 Pac. 767.)

1.   STATES—Banks and Banking—"Suit Against the State"—Right to Maintain. Plaintiffs in error presented their claim to the bank commissioner and the banking board, demanding payment out of the depositors' guaranty fund. Payment was denied, upon the ground that such deposit was not protected by said fund. Thereupon petition for writ of mandamus was filed in the district court of Oklahoma county. Alternative writ was issued, which, on final hearing, was discharged, and error is prosecuted to this court. Held, that the bank commissioner and the banking board are a part of the executive branch of the state government, and a suit in mandamus, seeking to compel said officers in their official capacity to allow and pay said claim out of the depositors' guaranty fund, is a suit in effect against the state, and cannot be maintained without the consent of the state.

2.   MANDAMUS—Official Acts—Exercise of Discretion—Banks and Banking. The bank commissioner and the banking board constitute a part of the executive branch of the state government, and the duties devolving upon said officials require the exercise of judgment and discretion. Held, in the absence of allegation and proof of fraud, or arbitrary action, their decision in a matter within their jurisdiction will not be reviewed or controlled by a writ of mandamus.

3.   BANKS AND BANKING—Guaranty Fund—County Deposits. The facts in this case examined, and held to bring the case with-

in the rule announced by this court in the case of **Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Company,** 33 Okla. 535, 126 Pac. 556.

4.    **SAME—"General Deposit."** Deposits of a county, made pursuant to Rev. Laws 1910, section 1540, providing for ample security and directing them to be made under strict legislative safeguards, do not come within the meaning of a "general deposit," protected by the depositors' guaranty fund, created pursuant to section 298 **et seq.**

(Syllabus by the Court.)

### Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Mandamus by Charles W. Lovett and others, County Commissioners of Creek County, against J. D. Lankford and others, composing the Banking Board of the State, and the Farmers' & Merchants' Bank of Sapulpa. Judgment for defendants, and plaintiffs bring error. Affirmed.

*V. S. Decker,* Co. Atty., *Dale & Bierer, Wm. T. Hutchings,* and *Ledbetter, Stuart & Bell,* for plaintiffs in error.

*Charles West,* Atty. Gen., and *Jos. L. Hull,* Asst. Atty. Gen., for defendants in error.

RIDDLE, J. This proceeding in error is prosecuted from a judgment of the district court of Oklahoma county in favor of defendants. Plaintiffs, as commissioners of Creek county, filed their petition in the district court against the State Banking Board and the Farmers' & Merchants' Bank of Sapulpa, praying for a writ of mandamus. Defendants filed their answer to the alternative writ of mandamus, and upon the issues thus made the court rendered judgment in favor of defendants, discharging the alternative writ.

It is alleged in the petition that the county treasurer of Creek county, on the 10th day of September, 1912, had on deposit in the Farmers' & Merchants' Bank the sum of $106,258.26, $77,435.01 being deposited to the credit of the

treasurer of Creek county, and $28,823.25 deposited in the name of the treasurer, as a special deposit; that said bank was at the time subject to the provisions of the bank guaranty law of the state of Oklahoma; that said bank failed on the 10th day of September, 1912, while said funds of said county were on deposit; that defendant Lankford, as State Bank Commissioner, took charge of said bank and its assets; that plaintiffs demanded payment of said deposit from said banking board out of the depositors' guaranty fund, and that, in the event there was not sufficient funds to pay same, the board issue a certificate of indebtedness covering same; that the banking board refused to pay same, or to issue a certificate of indebtedness. They prayed for a peremptory writ of mandamus, requiring said board to pay the amount of said deposit, or to issue a certificate of indebtedness for same.

An alternative writ of mandamus was allowed, setting out the foregoing state of facts. Defendants (1) deny the jurisdiction of the court, and (2) aver that the alternative writ did not state facts sufficient to entitle plaintiffs to the relief prayed. The second ground in the answer was sustained by the court, and judgment rendered, discharging said alternative writ.

Plaintiffs in error allege: First, that the court erred in refusing the peremptory writ of mandamus; second, in overruling motion for a new trial. Several other errors are alleged, but they all relate to one proposition. The questions presented for our determination are: (1) Is this suit, in effect, a suit against the state? (2) If such deposit was protected by the depositors' guaranty fund, is a writ of mandamus a proper remedy to secure the relief sought by plaintiffs? (3) Was the deposit in the name of the treasurer of Creek county in the Farmers' & Merchants' Bank of Sapulpa at the time it failed protected by the depositors' guaranty fund?

It is contended by counsel for plaintiffs that the last two questions must be answered in the affirmative, and the first in the negative; while counsel for defendants in error contend that the first must be answered in the affirmative, and the last two in the negative. Counsel for the respective parties have filed elaborate and able briefs in support of their contentions. These questions require the construction of the section of the statute relating to the deposits protected by the depositors' guaranty fund, and the authority conferred upon the banking board, and the character of duties required to be performed by them.

The first question is: Is this suit, in effect, a suit against the state? If this question may be answered in the affirmative, it will be conceded, we presume, that it cannot be maintained without the consent of the state. If defendants in error may be considered executive officers of the state, and in performing their duties in administering the law under consideration do so as such officers, and the property intrusted to their control and management by the law is property owned by the state, or property in which the state has a substantial interest, then it can hardly be questioned that this suit, in effect, is against the state. It was said by this court, in the case of *State ex rel. v. Cockrell*, 27 Okla. 630, 112 Pac. 1000:

"That the bank commissioner is a state officer has not been and cannot be questioned. That the depositors' guaranty fund, and the funds of a failed bank in the hands of a bank commissioner for the purpose of reimbursing the depositors' guaranty fund, is as much a fund of the state as the common school fund, is also true. The depositors' guaranty fund act was sustained by this court on the theory of the reserved power of the state to alter and amend charters of state banking corporations for the public welfare [citing authorities]. This power, exercised for the public welfare by the legislative act which causes to be levied the assessment 'against the capital stock of each and every bank or trust company organized or existing under the laws of this state * * * equal to five per centum of its average

daily deposits during its continuance in business as a banking corporation,' for the purpose of protecting the depositors of such banks, * * * is the same as that which levies or causes to be levied a tax upon the people and property within the state for the maintenance and support of the common schools and educational institutions. The title of such depositors' guaranty fund vests in the state, just as much so as the common school lands, or the proceeds of the sale of them, and the taxes levied and collected for the maintenance and support of said schools, all of which are held in trust by the state for a specific purpose."

In addition to the act of the Legislature creating the banking board and prescribing its duties, it is specifically provided that the state shall have a first lien upon all the assets of the bank, including liability of the individual stockholders. In the case of *Pennoyer v. McConnaughy*, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363, the court states the rule as follows:

"The principle stated by Chief Justice Marshall [in that case], that 'in all cases where jurisdiction depends on the party, it is the party named in the record,' and that 'the eleventh amendment is limited to those suits in which the state is a party to the record,' has been qualified to a certain degree in some of the subsequent decisions of this court, and now it is the settled doctrine of this court that the question whether a suit is within the prohibition of the eleventh amendment is not always determined by reference to the nominal parties on the record, as the court will look behind and through the nominal parties on the record to ascertain who are the real parties to the suit. * * * 'The objections to proceeding against state officers by mandamus or injunction are: First, that it is, in effect, proceeding against the state itself; and, secondly, that it interferes with the official discretion vested in the officers. It is conceded that neither of these things can be done. A state, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter.' "

See *Louisiana v. Jumel*, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448; *Miller v. Raum*, 135 U. S. 200, 10 Sup. Ct.

820, 34 L. Ed. 105; *Smith v. Reeves,* 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140; 36 Cyc. 915.

It cannot be questioned that a judgment in this case in favor of plaintiffs in error would directly affect the state, and would, in effect, be a judgment against the state, and would require the subjection of state funds to satisfy said judgment. Therefore it cannot be maintained. That this is a sound and just doctrine is clearly to be seen. If plaintiffs in this case can control the action of the bank commissioner and banking board in this proceeding in the discharge of their usual and ordinary duties in the manner provided by statute, in the execution of the law confided to their control, then, in principle, every other person or corporation, asserting a claim against this fund and presenting the same to the banking board, when such officials duly act upon same and rule adversely to such claimant, could resort to the courts, and not only have the court substitute its judgment for that of such officials, but would harass and create confusion, the effect of which would be to destroy the efficiency of such board.

In a late case from the Supreme Court of the United States, *Murray v. Wilson Distilling Co.,* 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742, the court had under consideration a question similar to the one now before us. That case arose in South Carolina under a dispensary law (25 St. at Large, p. 835), section 11 of which act, as aided by 25 St. at Large, p. 1289, provided:

"That said commission is hereby declared to possess full power to pass upon, fix and determine all claims against the state growing out of dealings with the dispensary, and to pay for the state any and all just claims, which have been submitted to and determined by it, and no other, out of the assets of the dispensary which have been, or may hereafter be, collected by said state dispensary commission: Provided, that each and every person, firm, or corporation presenting a claim or claims to said commission shall have the

right to appeal to the Supreme Court, as in cases at law.
* * *"

Chief Justice White, speaking for the court, said:

"We could not, therefore, sustain the exercise of jurisdiction by the circuit court without in effect deciding that the state can be compelled, by compulsory judicial process, to perform a contract obligation. It is certain that, at least by indirection, the bills of complaint sought to compel the state to specifically perform alleged contracts with the vendors of liquor by paying for liquor alleged to have been supplied. But it is settled that a bill in equity to compel the specific performance of a contract between individuals and a state cannot, against the objection of the state, be maintained in a court of the United States. Thus, in *Hagood v. Southern*, 117 U. S. 52 [6 Sup. Ct. 608, 29 L. Ed. 805], where, in suits brought in a court of the United States against officers and agents of the state of South Carolina, the holders of certain revenue scrip of the state endeavored to enforce the redemption thereof according to the terms of the statute, in pursuance of which the scrip was issued, which statute was alleged to constitute an irrepealable contract, the court said: 'Though not nominally a party to the record, it [the state] is the real and only party in interest, the nominal defendants being the officers and agents of the state, having no personal interest in the subject-matter of the suit, and defending only as representing the state. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the state. The state is not only the real party to the controversy, but the real party against which relief is sought by the suit; and the suit is, therefore, substantially within the prohibition of the eleventh Amendment to the Constitution of the United States, which declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."' * * * The absence in the winding-up act of a provision conferring authority to review in the ordinary courts of justice the action of the commission concerning claims, instead of supporting the contention that the state had abandoned all property right in the funds placed

in the hands of the commission, tends to a contrary conclusion, since it at once suggests the evident purpose of the state to confine the determination of the amount of its liability to claimants, to the officers or agents chosen by the state for that purpose. And it is elementary that, even if a state has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the state in a court of the United States."

In principle, the language quoted applies with all its force to the case at bar. The fact that the Legislature failed to make any specific provision for review in the courts of the action of the banking board in the administration of the law in question, concerning claims against the depositors' guaranty fund, tends to prove the evident purpose of the state to confine the determination of and the validity of those claims, and the question as to whether or not they are protected by this fund, to the officials composing the board.

From the foregoing, it is clear to our minds that the suit in question is, in effect, a suit against the state, and, in the absence of the consent of the state, the same cannot be maintained.

The second question requires the consideration and construction of certain sections of the statute governing the State Banking Board and the bank commissioner. Section 299, Rev. Laws 1910, was amended by section 1 of chapter 22, Sess. Laws 1913, which provides as follows:

"That banking board shall be composed of the bank commissioner and three other persons, which persons shall be appointed by the Governor, by and with the advice and consent of the Senate, no one of whom shall be an officer or director in a national bank. Said three members shall hold office concurrently with the Governor, and as soon as said members are appointed under the provisions of this act, the board shall select one of its members as treasurer. * * * The bank commissioner shall be chairman of said board. Said board shall have the supervision and control of the depositors' guaranty fund, and shall have the power to adopt all necessary rules and regulations not inconsistent

with law for the management and administration of said fund."

The latter part of section 2 of this act provides that the bank commissioner shall execute a bond in the sum of $25,000, and each member of said board shall execute a bond in the sum of $5,000 for the faithful performance of his duty. The latter part of paragraph 2, section 6, of the amendatory act provides for a levy of certain assessments, and then provides:

"Such fund so created shall be known as the depositors' guaranty fund of the state of Oklahoma, and shall be used solely for the purpose of liquidating deposits of failed banks and retiring warrants provided for in this act."

Certain other provisions are made, which are not material here. Part of section 300, Rev. Laws 1910, provides:

"If the amount realized from such emergency assessments shall be insufficient to pay off the depositors of all banks which have failed, having valid claims against said depositors' guaranty fund, the State Banking Board shall issue and deliver to each depositor having any such unpaid deposit, a certificate of indebtedness for the amount of his unpaid deposit, bearing six per cent. interest."

The above section has been amended by section 6, c. 22, Sess. Laws 1913, which provides for the issuance of certificates of indebtedness, to be known as "depositors' guaranty fund warrants of the state of Oklahoma." Section 302, Rev. Laws 1910, provides:

"Whenever any bank or trust company organized or existing under the laws of this state shall voluntarily place itself in the hands of the bank commissioner, or whenever any judgment shall be rendered by a court of competent jurisdiction, adjudging and decreeing that such bank or trust company is insolvent, or whenever its rights or franchises to conduct a banking business under the laws of this state shall have been adjudged to be forfeited, or whenever the bank commissioner shall become satisfied of the insolvency of any such bank or trust company, he may, after due examination of its affairs, take possession of said bank or trust company and its assets, and proceed to wind up its

affairs and enforce the personal liability of the stockholders, officers and directors."

Section 303, *Id.,* provides:

"In the event that the bank commissioner shall take possession of any bank or trust company which is subject to the provisions of this chapter, the depositors of said bank or trust company shall be paid in full, and when the cash available or that can be made immediately available of said bank or trust company is not sufficient to discharge its obligations to depositors, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, as provided in section 300, the amount necessary to make up the deficiency; and the state shall have, for the benefit of the depositors' guaranty fund, a first lien upon the assets of said bank or trust company, and all liabilities against the stockholders, officers and directors of said bank or trust company and against all other persons, corporations or firms. Such liabilities may be enforced by the state for the benefit of the depositors' guaranty fund."

Section 304 provides that the bank commissioner shall take charge of books, records, and assets of every description of such bank or trust company and collect debts, dues, and claims belonging to it, and upon order of court may compromise or settle such claims and sell certain property belonging to such bank and enforce a personal liability of its stockholders. In considering sections 300 and 303 together, it will be seen that the law has specifically confided to the banking board and the bank commissioner the duty and authority to determine the validity of claims against the depositors' guaranty fund. By this section it is not only their duty to determine when a claim is valid against the bank, but they must further determine whether such claim is protected and required to be paid from the depositors' guaranty fund. *Lankford v. Okla. Engrav. & Printing Co.,* 35 Okla. 404, 130 Pac. 278.

In the case of *State ex rel. v. Cockrell, supra,* this court again stated:

"The State Bank Commissioner, or the banking department, is a part of the executive department of the state, and is intrusted with the receipt, custody, and disbursement of funds of failed banks."

Thus, if defendants in error are part of the executive branch of the state, charged with the exercise of judgment and discretion in the administration of the law under consideration, their acts will not be controlled by mandamus. This is too well settled now to be an open question. And this is true, even where those duties require an interpretation of law, and when there are no controverted facts.

The rule is clearly stated in the case of *United States ex rel. Dunlap v. Black*, 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354, in the following language:

"The principle of law deducible from these two cases is not difficult to enounce. The court will not interfere by mandamus with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them— that is, a service which they are bound to perform without further question, then, if they refuse, a mandamus may be issued to compel them. Judged by this rule the present case presents no difficulty. The Commissioner of Pensions did not refuse to act or decide. He did act and decide. He adopted an interpretation of the law adverse to the relator, and his decision was confirmed by the Secretary of the Interior, as evidenced by his signature of the certificate. Whether, if the law were properly before us for consideration, we should be of the same opinion, or of a different opinion, is of no consequence in the decision of this case. We have no appellate power over the commissioner, and no right to review his decision. That decision and his action taken thereon were made and done in the exercise of his official functions. They were by no means merely ministerial acts. *Brashear v. Mason*, 6 How. 92 [12 L. Ed. 357]; *United States ex rel. Goodrich v. Guthrie*, 17 How. 285 [15 L. Ed. 102]; *Commissioner of Patents v. Whiteley*, 4 Wall.

522 [18 L. Ed. 335]; *Georgia v. Stanton,* 6 Wall. 50 [18 L.
Ed. 721]; *Gaines v. Thompson,* 7 Wall. 347 [19 L. Ed. 62];
*United States ex rel. McBride v. Schurz,* 102 U. S. 378 [26
L. Ed. 167]; *Butterworth v. Hoe,* 112 U. S. 50 [5 Sup. Ct.
25, 28 L. Ed. 656]; *United States v. Lynch,* 137 U. S. 280
[11 Sup. Ct. 114, 34 L. Ed. 700]."

See, also, *Kimberlin v. Commission to Five Civilized
Tribes,* 104 Fed. 653, 44 C. C. A. 109; *Norris v. Cross,* 25
Okla. 287, 105 Pac. 1000; *County Commissioners v. State,*
31 Okla. 196, 120 Pac. 913; *Molacek v. White,* 31 Okla. 693,
122 Pac. 523; *Dunham, City Clerk of Guthrie, v. Ardery,*
43 Okla. 619, 143 Pac. 331.

Applying the doctrine stated in the quotation from the
foregoing case, it renders the question presented here rather
simple. Defendants in error constitute a part of the execu-
tive department of the state. They are required to pass
upon the validity of the claim in question, and as to whether
it was protected by section 303, *supra,* and was entitled to
be paid out of the depositors' guaranty fund. They did not
fail to pass upon the question presented to them; but they
did decide, and construed the law adversely to the conten-
tion of plaintiffs, holding that such claim was not protected
by the depositors' guaranty fund. It was their duty to con-
strue the law and apply it to the facts before them. They
evidently followed the construction and application of the
statute by this court in the case of *Columbia Bank & Trust
Co. v. U. S. Fidelity & Guaranty Co., supra.* Their decision
in this regard is upheld by us in this opinion. From the
foregoing, it is clear that defendants constitute a part of
the executive department of the state government, and that
they were vested with the exercise of discretion and judg-
ment in the premises; and their action cannot be reviewed
or reversed in a proceeding for writ of mandamus.

Approaching the third question raised: The conclus-
ion we have reached upon the other two questions renders
it unnecessary to consider and determine this question, al-

though properly before us. We have carefully read the record and all that counsel have said in discussing this point, and with much interest listened to the oral argument, and have considered all in connection with the able and logical opinion in the case of *Columbia Bank & Trust Co. v. U. S. Fidelity & Guaranty Co., supra,* and to our minds the facts of this case are so similar to the facts in that case that in principle there can be no distinction made.

It cannot be seriously questioned that under the bank guaranty law, as construed by this court in the Columbia Bank & Trust Company case, *supra,* no state funds deposited in the manner provided by law in any bank are protected by the bank guaranty fund. The principal distinction which can be made under the law governing the deposit of state funds and that of county funds is that the State Treasurer, with the approval of the Governor and Attorney General, is to select the depositories for state deposits, and such depositories shall pay interest on the state funds at the rate of 3 per cent., and as additional security, the State Treasurer is authorized to take first mortgage bonds on farm lands, but is prohibited from taking surety company bonds; while, in making deposits of county funds, the county commissioners are to select the depositories and are permitted to accept surety bonds, but are not authorized to accept first mortgage bonds on real estate. In the deposit of state funds, the Governor, Attorney General and the State Treasurer are to approve the securities; in the deposit of county funds, a commission composed of the county judge, county attorney, and county clerk shall pass upon and approve the securities. In principle, in construing and applying this provision of the law, it will be seen that there can be no real distinction made between a deposit of state funds in a depository authorized to receive the same, and that of county funds; and this is true, whether this court in that case placed its decision upon the ground

that the school fund there was otherwise secured, or on the ground that the statute providing for the deposit of the school funds was a specific provision relating to a special subject, and both acts were passed at the same session of the Legislature, or that the deposit there was a special and not a general deposit, or upon all the grounds mentioned. This court, in the Columbia Bank & Trust Company case, *supra,* in effect, held that the deposits of the state were not general deposits, covered and protected by the depositors' guaranty fund. So we hold in this case that the same rule applies to the deposits of Creek county, made in pursuance of the provisions of the statute, prescribing and providing for ample securities, and directing them to be made under strict legislative safeguards; that they do not come within the meaning of a general deposit, under section 1540, Rev. Laws 1910, protected and covered by the depositors' guaranty fund. Counsel approve the rule announced in the Columbia Bank & Trust Company case, and say that it is a proper construction of the section of the statute here under consideration; and to do so is equivalent to an admission in advance that the conclusion we have reached on this point is likewise sound.

From the foregoing conclusions, the judgment of the trial court must be affirmed.

All the Justices concur.