### LESLIE v. JOHNSON (two cases).
#### Nos. 1830, 1831.

District Court, W. D. Oklahoma.
July 30, 1938.

Abernathy, Howell & Abernathy, of Shawnee, Okl., for plaintiff.

M. B. Cope and Houston Hill, both of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

Glen E. Leslie, the receiver of the Shawnee National Bank, Shawnee, Oklahoma, is the successor by appointment to Ben F. Johnson, the receiver at the time of the institution of these suits, and the two suits will be considered together for purposes of trial.

Howard C. Johnson during the pendency of these actions was the state bank commissioner of Oklahoma, succeeding W. J. Barnett, and has been succeeded by D. P. Richardson as state bank commissioner.

In No. 1830, W. J. Barnett, as state bank commissioner and receiver for the Depositors' Guaranty Fund, on August 22, 1932 made a deposit of $11,000 from said fund in the Shawnee National Bank and at the time of making said deposit, the said bank delivered to the said W. J. Barnett, as bank commissioner and receiver, certain assets of said bank to secure said deposit, said pledged assets being as follows: $10,000 of City of Altus Water Works Extension Bonds; $7,000 of Board of Education, City of Tecumseh Bonds; and $10,000 of Board of Education, City of Ada Bonds.

In No. 1831, W. J. Barnett, as bank commissioner, deposited in the Shawnee National Bank the sum of $8,685.74, said deposit being made in the name of the "W. J. Barnett, Bank Commissioner, Dividend Account of the Bank of Commerce, Okmulgee, Oklahoma," and on the 22nd day of August, 1932, the said bank commissioner deposited in the Shawnee National Bank the sum of $5,000 and said bank issued a deposit slip therefor directing said deposit as the "W. J. Barnett, Bank Commissioner, Liquidating Account of the Bank of Commerce, Okmulgee, Oklahoma." Said deposits were secured by pledging the same assets pledged, and set out hereinabove, in No. 1830, Equity. In other words, the bank delivered to W. J. Barnett, bank commissioner and receiver, bonds in the amount of $27,000 to secure the deposit made by Barnett as bank commissioner and receiver in the sum of $11,000, and on the account of Depositors' Guaranty Fund for $13,685 in No. 1831, Equity, as funds belonging to the Dividend Account of the Bank of Commerce, Okmulgee, Oklahoma, also funds in the hands of the state bank commissioner.

In October, 1934, with the consent of the Comptroller of the Currency of the United States of America and Ben F. Johnson as receiver of the Shawnee National Bank, said W. J. Barnett, as state bank commissioner and receiver, sold the City of Ada Bonds for the sum of $10,151.25 and credited $8,823.05 of such proceeds to the "W. J. Barnett, Bank Commissioner, Dividend Account of the Bank of Commerce, Okmulgee, Oklahoma," leaving a balance of $1,328.20 in his possession, which sum the said Barnett applied on said Guaranty Fund Account. Thereafter and prior to the institution of this action, the receiver of the said Shawnee National Bank, acting under instructions of the Comptroller of the Currency of the United States of America, advised Howard C. Johnson, the then bank commissioner and receiver for said Guaranty Fund, that said pledging of assets to secure the deposit of a portion of the Depositors' Guaranty Fund was ultra vires and void, and demanded the return of the Tecumseh Board of Education Bonds in the sum of $7,000, the Altus Water Works Extension Bonds in the sum of $10,000, together with the proceeds of the interest coupons attached to said bonds at the time the pledge thereof was made, together with a return of the proceeds of the City of Ada Bonds in the sum of $10,151.25 and the proceeds of all coupons attached thereto, at the time of the pledge thereof. Said Howard C. Johnson having failed and refused to make such restitution, this action was instituted for an accounting on the bonds sold and for the recovery of the bonds unsold.

As stated hereinbefore, Barnett sold the Ada bonds for the sum of $10,151.25 and credited $6,593.92 to the "W. J. Barnett, Bank Commissioner, Dividend Account of the Bank of Commerce, Okmulgee, Oklahoma," which with dividends in the total sum of $2,753.63 paid by the receiver of said bank prior to November 2, 1934, fully liquidated said account leaving a balance of $1,328.20, which sum said Barnett applied to the credit of the Guaranty Fund deposit hereinabove referred to, theretofore made by Barnett as commissioner and receiver.

The contention of the plaintiff in each of the cases is that the pledging of the bonds in question by the bank was ultra vires and void. In other words, the Shawnee National Bank had no authority under the national banking laws of the United States to pledge the assets of the bank to secure the deposit of funds in said bank by the state bank commissioner.

In the first case, No. 1830, the commissioner deposited the funds and the bank designated the account as deposited by Barnett as receiver of the Guaranty Fund. It is immaterial, however, whether they were deposited as receiver or as bank commissioner. The bank had knowledge of Barnett's official capacity and at no time had these funds ever left the possession or control of the state bank commissioner. So, for the purposes of this decision, the deposits will be treated as made by the state bank commissioner.

The plaintiff contends that he is entitled, as receiver of the Shawnee National Bank, to the return of these securities.

Voluminous briefs have been filed in this case and a much wider latitude assumed in the argument in the briefs than is necessary. There are three propositions involved. First, the character of the funds deposited by the bank commissioner. Second, the provisions of the state statutes governing the deposit of funds in the hands of the bank commissioner in state banks and the right of the commissioner to require and the power of the bank to pledge the assets of the bank to secure said deposit. Third, the Federal Statutes governing the deposit of public funds, generally, in a national bank and the power of the national bank to pledge its assets to secure said deposit.

■ Section 5415, O.S.1931, 62 Okl.St. Ann. § 71, reads: "The State Treasurer is hereby authorized and directed by and with the consent of the Governor and Attorney General to select a number of banks within the State of Oklahoma as depositors (sic) of the public funds of the State; such banks must be in good standing and conducting a regular banking business and they shall pay to the State, interest at the rate of three (3) per cent. per annum, on daily balances, and shall collect free of charge to the State, such drafts, bills of exchange and checks as may be deposited by the State in the regular course of business, and shall pay all checks and drafts legally authorized and duly drawn on the State funds deposited in such bank. There shall not be deposited in any one of such banks, of the State funds, an amount to exceed the capital stock of any such bank. Such banks shall make quarterly reports of the fiscal year of the amount deposited and checked out or withdrawn and the balances on hand, including accrued interest belonging to the State."

Section 5419, O.S.1931, 62 Okl.St.Ann. § 75: "It shall be the duty of each and every state officer, state board, state commission and all members and employees of either thereof, to deposit daily in the official depository designated in section one (1) [5418] hereof, all moneys, checks, drafts, orders, vouchers, funds, rentals, penalties, costs, proceeds of sale of property, fees, fines, forfeitures and public charges of every kind received or collected by virtue or under color of office, and all such funds and moneys in the hands of any such officer, board, commission, or of any member or employee of either thereof, at the time this act becomes effective shall be immediately transferred to and covered into the said official depository; provided, that all checks, drafts, orders and vouchers so deposited shall be credited and cleared at par, and should payment be refused on any such check, draft, order or voucher, or should the same prove otherwise worthless, the amount thereof and any costs accruing thereon shall be a charge against the account theretofore credited with the same, and the officer, board, commission, or member or employee of either thereof so depositing any such unpaid or worthless check, draft, order or voucher shall be liable for any loss to the state, its funds, or funds under its management, occasioned by the acceptance of any such unpaid or worthless check, draft, order or voucher. All moneys when so received by the State

Treasurer, as such official depository shall be by him deposited daily in banks designated and qualified as depositories, as hereinafter provided, and shall draw interest at the rate of not less than three per centum (3%) per annum on average daily balances, which said interest shall be paid monthly and when collected shall be credited to the respective funds and accounts so earning the same."

Section 9172, O.S.1931, 6 Okl.St.Ann. § 148: "Whenever any bank or trust company organized or existing under the laws of this State shall voluntarily place itself in the hands of the Bank Commissioner, or, whenever any judgment shall be rendered by a court of competent jurisdiction, adjudging and decreeing that such bank or trust company is insolvent, or whenever its rights or franchises to conduct a banking business under the laws of this State shall have been adjudged to be forfeited, or whenever the Bank Commissioner shall become satisfied of the insolvency of any such bank or trust company, he may, after due examination of its affairs, take possession of said bank or trust company and its assets, and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers and directors."

Section 9173, O.S.1931, 6 Okl.St.Ann. § 149, is in part: "In the event the Bank Commissioner shall proceed to wind up the affairs of any bank or trust company, as provided for in Section 4165, Compiled Oklahoma Statutes, Annotated, 1921, [9172] * * *. No disbursements of the assets of the said banking corporation shall be made, except upon the order of the Bank Commissioner. The Bank Commissioner shall have power and authority to institute and prosecute all suits necessary for the liquidation of the assets of the insolvent corporations taken over by him and such suits shall be brought in the name of the State of Oklahoma, on the relation of the Bank Commissioner. * * *"

Section 9177, O.S.1931, 6 Okl.St.Ann. § 155 provides: "The monies collected by the Commissioner shall be from time to time deposited in one or more banks of deposit, savings banks or trust companies, and, as security therefor, shall take such security as is required for the deposit of other public funds. At any time after the expiration of the date fixed for presentation of claims, the Commissioner may, out of the funds remaining in his hands for the payment of expenses, declare one or more dividends and, after the expiration of one year from the first publication notice to creditors, may declare a final dividend; such dividend to be paid to such persons and in such amount and upon such notice as may be directed by the District Court or a Judge thereof. Objections to any claim not rejected by the Commissioner may be made by any party interested by filing a copy of such rejection with the Commissioner, who shall present the same to the District Court or a Judge thereof at the time of the next application to declare a dividend. The Court thereupon shall make such order as is necessary in allowing or disallowing such claim or any part thereof."

Section 9179, O.S.1931, 6 Okl.St.Ann. § 157, provides in part as follows: "The State of Oklahoma, on the relation of the Bank Commissioner, shall be deemed to be the owner of all of the assets of failed banks in his hands for the use and benefit of the depositors and creditors of said bank, and no deposit for costs shall be required in any courts of the State of Oklahoma, in which the State of Oklahoma, on the relation of the Bank Commissioner, is a party, and no costs shall be taxed against the State of Oklahoma and paid by the State of Oklahoma, on the relation of the Bank Commissioner, in any such suits, and it shall be the duty of all the Courts of the State of Oklahoma and all the officers of the State or County to give preference to all matters pending in such Courts in which the State of Oklahoma, on the relation of the Bank Commissioner, is a party."

Section 9181, O.S.1931, 6 Okl.St.Ann. § 159, provides: "The title to the assets of failed banks belonging to the State Guaranty Fund is hereby vested in the Bank Commissioner for the purpose of liquidation and the said Bank Commissioner is authorized to liquidate such assets in the same manner that the assets of other banks are liquidated, and the proceeds of such liquidation, and the proceeds thereof shall be paid into the State Guaranty Fund for the purpose of retiring the outstanding Guaranty Fund Warrants."

All of the foregoing statutes were in full force and effect at the times these deposits were made.

The Supreme Court of Oklahoma has construed the foregoing statutes in numerous cases. In Van Meter v. State ex rel. Mothersead, State Bank Commissioner, 132 Okl. 230, 270 P. 41, the court held, quoting from the syllabus: "By virtue of the provisions of chapter 80, S.L.1924 [6 Okl.St.Ann. §§ 149, 152 et seq.], the assets, moneys, notes, and bills receivable of a state bank, upon insolvency, vest in the state, with the state bank commissioner as trustee for the use and benefit of the depositors and creditors of the bank, and with the administration thereof under the general superintending control of the district court of the county in which the insolvent bank is located."

In the foregoing opinion the court held that upon the insolvency of a state bank, its assets "vest in the state, with the state bank commissioner as trustee." It is true that this is followed by the words, "for the use and benefit of the depositors and creditors of the bank." However, the full power and control over said assets are vested in the state.

In a prior decision by the Supreme Court of Oklahoma, State ex rel. Taylor v. Cockrell, 27 Okl. 630, 112 P. 1000, the court said (page 1001): "That the depositors' guaranty fund and the funds of a failed bank in the hands of a Bank Commissioner for the purpose of reimbursing the depositors' guaranty fund is as much a fund of the state as the common school fund is also true."

In Lovett v. Lankford, 47 Okl. 12, 145 P. 767, the question was raised whether or not a suit against the bank commissioner was a suit against the state and whether or not the assets of a failed bank in the hands of the bank commissioner were in fact assets belonging to the state and the court quoted from State ex rel. v. Cockrell, supra, as follows (page 770): " 'The state bank commissioner, or the banking department, is a part of the executive department of the state, and is intrusted with the receipt, custody, and disbursement of funds of failed banks.' "

And the court said, further: "If defendants in error may be considered executive officers of the state, and in performing their duties in administering the law under consideration do so as such officers, and the property intrusted to their control and management by the law is property owned by the state, or property in which the state has a substantial interest, then it can hardly be questioned that this suit, in effect, is against the state."

In Lankford v. Schroeder, 47 Okl. 279, 147 P. 1049, L.R.A.1915F, 623, the court again discussed the same questions and held, quoting from the fourth and fifth paragraphs of the syllabus: "The State Banking Board and the State Bank Commissioner constitute a part of the executive department of the state government, and cannot be sued without the state's consent."

"The state guaranty fund is the property of the state as much as ad valorem taxes collected for the state's maintenance, and the state has a first lien on assets of a failed bank in the hands of the State Bank Commissioner, to secure reimbursement of the guaranty fund for sums paid therefrom to the depositors of such bank, and no suit can be maintained by a creditor of the bank against the bank commissioner for the application of such assets or guaranty fund to the payment of his claim."

In Lankford v. Platte Iron Works Co., 235 U.S. 461, 35 S.Ct. 173, 59 L.Ed. 316, a case which went from Oklahoma to the Supreme Court of the United States, the court said (page 176): "In State v. Cockrell, 27 Okl. 630, 112 P. 1000, the Supreme Court of Oklahoma had occasion to define the duties of state examiner and inspector. It decided that the office was constituted by the Constitution of the state and was independent of the control of the governor, and passing upon the authority of the examiner and inspector over the accounts of the bank commissioner, it decided that 'the funds and assets' of an insolvent bank are 'under the management of the state,' and 'that the depositors' guaranty fund and the funds of a failed bank in the hands of a bank commissioner for the purpose of reimbursing the depositors' guaranty fund is as much a fund of the state as the common school fund.' "

The same holding was had in State Banking Board v. Oklahoma Bankers' Trust Co., 49 Okl. 72, 151 P. 566; National Surety Co. v. State Banking Board, 49 Okl. 184, 152 P. 389; State Banking Board v. Oklahoma Bankers' Trust Co., 63 Okl. 260, 164 P. 660.

In White et al. v. State ex rel., 94 Okl. 7, 220 P. 624, the Supreme Court of Oklahoma held that "The statute of limitations does not run against the state in an action on a promissory note held by the state

bank commissioner as the assets of an insolvent bank."

The same rule was adhered to by the Supreme Court of Oklahoma in State ex rel. Freeling v. Smith, 77 Okl. 277, 188 P. 96; State ex rel. Attorney General v. Ware, 82 Okl. 130, 198 P. 859, 45 A.L.R. 127; State ex rel. Walcott v. City National Bank of Commerce, 88 Okl. 154, 212 P. 321; State ex rel. Shull, Bank Commissioner v. McLaughlin, Adm'r, 159 Okl. 4, 12 P.2d 1106.

It is clear, therefore, that in all of these decisions in construing the statute as to whether the assets of a failed state bank in Oklahoma are the property of the state or under the dominion and control of the state, the Supreme Court has consistently held that they are the property of the state for the purposes of administration.

One of the deposits was made by W. J. Barnett, state bank commissioner, as receiver for the Guaranty Fund and the receiver was appointed by the District Court of Oklahoma County, Oklahoma. Regardless of the action of the District Court of Oklahoma County in designating the bank commissioner as receiver of this fund, the status of the fund and the status of the bank commissioner were not changed in the least. The bank commissioner was the receiver of these funds by statute and I know of no power that the District Court would have to change that relationship and putting the strongest construction upon the action of the District Court of Oklahoma County, that court recognized the state bank commissioner as the legal guardian of these funds so designated by statute.

The second proposition involves the provisions of the state statutes governing deposit of funds in the hands of the bank commissioner in a state bank and the right of the commissioner to demand, and the power of the bank to pledge, the assets of the bank to secure said deposit.

Section 9115, O.S.1931, 6 Okl.St.Ann. § 105, provides in part as follows: "No bank, banker or bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or by selling or transferring any of the assets of any insolvent bank in consideration of any deposit in such bank; provided, any bank, by the unanimous consent of its board of directors, expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank, except promissory notes, as security for postal savings funds, government funds, Indian funds under the control of the Federal Government, state funds of the State of Oklahoma, county, township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits * * *."

Section 9122, O.S.1931, 6 Okl.St.Ann. § 107, provides: "Any bank or trust company which has complied with the provisions of this chapter, or any national bank located in this State, shall be eligible to act as a depository of State funds, of any fund under the control of the State or any officer thereof, upon compliance with the laws of this State relating to the deposits of public funds."

By Chapter 137, Session Laws of Oklahoma 1923, certain provisions of the Depositors' Guaranty Fund Law then in existence were amended and certain provisions of said law were repealed. Section 4162, C.O.S.1921, relating to the creation of the Depositors' Guaranty Fund and assessments therefor, and Depositors' Guaranty Fund warrants, was repealed by Section 10, Chapter 137, Session Laws of Oklahoma, 1923, same being Section 9165, O.S.1931, 6 Okl.St.Ann. § 281, which reads as follows: "Section 4162 of the Compiled Oklahoma Statutes, annotated, 1921, relating to the creation of the depositors guaranty fund and assessments therefor, and depositors guaranty fund warrants is hereby repealed; provided that the provisions of this Section shall not relieve or release any bank, firm or corporation, or any officer, stockholder or director or any other person, from any obligation, assessment or liability to the Depositors Guaranty Fund or to the depositors or creditors of any failed state bank, which obligation, assessment or liability existed at the time of the passage and approval of this Act."

It will be observed from the amendments to the statute hereinbefore set out that title to the assets of failed banks belonging to the State Guaranty Fund is vested in the bank commissioner for the purpose of liquidation, but the actual title to the fund remains in the state.

Prior to 1930, the right of a national bank to pledge its assets to secure deposit of funds was strictly limited. This act,

after making provision for the character of deposits in national banks by agencies of the national government, provided in addition thereto (12 U.S.C.A. § 90): "Any [national banking] association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

■ The term "public money of a state" has a broad meaning and the Federal Courts have without exception followed the interpretation given by the highest court of a state to state statutes. The Supreme Court of Oklahoma, as hereinbefore set out, has held that a fund in the hands of the state bank commissioner is "as much a fund of the state as the common school fund," (State ex rel. v. Cockrell, supra), and in other decisions has held that the funds in the hands of the state bank commissioner are funds "in which the state has a substantial interest," (Lovett v. Lankford, supra.) And, again, "the state guaranty fund is the property of the state as much as ad valorem taxes collected for the state's · maintenance." Lankford v. Schroeder, supra.

It is contended by the plaintiff that the Supreme Court of Oklahoma in Wenner v. Mothersead, 129 Okl. 273, 264 P. 816, has reversed its position on this proposition. However, in the opinion on rehearing, the court said (page 819):

"We are not unmindful of State v. Cockrell, 27 Okl. [630], 639, 112 P. 1000; Lovett v. Lankford, 47 Okl. 12, 145 P. 767, and Lankford v. Schroeder, 47 Okl. 279, 147 P. 1049, L.R.A.1915F, 623, heretofore cited, nor of the expression in the Cockrell Case:

"'That the depositors' guaranty fund, and the funds of a failed bank in the hands of a bank commissioner for the purpose of reimbursing the depositors' guaranty fund, *is as much a fund of the state as the common school fund, is also true.'*"

The court, commenting upon the foregoing quotation, said: "But the words underscored indicate that in fact (1) neither are considered state funds; (2) both are considered trust funds. Being trust funds, they are subject to taxation or not dependent upon the individual nature of the property. The school fund being property used exclusively for educational purposes, like that used exclusively for religious and charitable purposes (and being property of the United States), the same was so recognized and exempted from taxation by section 6, article 10, of the Constitution."

The court further referred to State Banking Board v. Oklahoma Bankers' Trust Co., 49 Okl. 72, 151 P. 566; National Surety Co. v. State Banking Board, 49 Okl. 184, 152 P. 389; State Banking Board v. Oklahoma Bankers' Trust Co., 63 Okl. 260, 164 P. 660; and State ex rel. Freeling v. Smith, 77 Okl. 277, 188 P. 96, and held that these cases and others following the rule therein announced are not in conflict with the decision herein. The court concluded: "None of these cases hold the fund in question to be a state fund; in fact, they may be said to be based upon a view that the fund is property in which the state has a substantial interest."

The court has recognized funds in the hands of the bank commissioner as state funds, in more recent opinions. Shull, State Bank Commissioner v. Beasley, 149 Okl. 106, 299 P. 149, 77 A.L.R. 465, and State ex rel. Murray, Gov. et al. v. Pure Oil Company et al., 169 Okl. 507, 37 P.2d 608. In the last named case, the court said (page 610): "The protection of depositors of insolvent state banks is a distinct economic policy of the state. * * * This policy was promulgated by constitutional provision (section 1, art. 14, Okl. State Const. [Okl.St.Ann.Const. art. 14, § 1]) as vitalized by legislative enactments * * *. In so far as the object of this action is to further the established economic policy of the state, the state may be said to have a real interest created by its governmental policy, as distinguished from a mere nominal interest, even though the pecuniary benefits of the litigation, if ultimately successful, go to the depositors and creditors of the insolvent bank."

Conceding the position of the court in Wenner v. Mothersead, supra, which merely holds that real estate held by the bank commissioner is subject to tax, I cannot agree that this opinion in any wise modifies the construction placed upon the state statutes by the Supreme Court in prior decisions, that funds in the hands of the bank commissioner are "public money of the state."

■ Third proposition. The Federal Statutes governing the deposit of public funds generally in national banks and the power

of the national bank to pledge its assets to secure said deposit.

That portion of Section 5153, R.S.U.S., as amended by the Act of June 25, 1930, 12 U.S.C.A. § 90, which is being considered, has been hereinbefore quoted.

The plaintiff relies principally upon Texas & P. R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787. In the Texas & Pacific R. Co. Case the court held that a national bank has no power to pledge its assets to secure a private deposit, and in the Sneeden Case the court held that since the state of Illinois has not conferred upon its banks the power to pledge assets to secure deposits of political subdivisions of the state, under the Act of Congress above cited, national banks would have no power to pledge their assets to secure deposits from a political subdivision of the state or the state itself. There is no controversy over these points.

As stated above, I am of the opinion, based upon the statutes of Oklahoma and the decisions of the Supreme Court construing these statutes, that funds in the hands of the state bank commissioner are "public money of a state," and are not private funds.

In Fidelity & Deposit Co. of Maryland v. Kokrda, 66 F.2d 641, the Tenth Circuit Court of Appeals held, quoting from the syllabus:

"1. National bank is authorized to give same kind of security for public deposits as state banks in same state, and state law determines procedure required in giving security.

"2. Where state Legislature has declared that deposits of public funds shall be secured, good-faith contract to secure such deposits should be sustained, though statutory requirements are not strictly followed."

This court sustained the same theory in Haynes v. City of Woodward, 6 F.Supp. 270, and also in Kavanaugh v. Fash, School Dist. Treasurer, which was affirmed by the Tenth Circuit Court of Appeals in Kavanaugh v. Fash, 74 F.2d 435.

In a recent case, decided December 6, 1937, Mermis, Recr. of First National Bank in Ness City, Kansas v. Laura M. Jackson, Clerk of Dist. Court of Ness County, Kansas, 93 F.2d 579, the Tenth Circuit Court of Appeals passed upon a similar question from the state of Kansas. Section 9-301, G.S. Kansas, 1935, provides: "That all moneys which shall come into the hands of any officer of any county, township, school district, city or village, or any municipal or public corporation or any other political subdivision within this state, pursuant to any provision of law authorizing such officer to collect or receive the same, shall be deemed public moneys within the meaning of this act."

The Kansas statute authorizes banks to pledge their assets to secure deposit of public moneys and section 1, ch. 89, Kan. S.L. of 1927, reads in part: "That section 9-142 of the Revised Statutes of Kansas, 1923, be and the same is hereby amended to read as follows: No bank, bankers, or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, except that bonds of the United States, of the state of Kansas, or of some county, school district, or municipality of the state of Kansas, or other securities, may be deposited with the state treasurer as security for the deposit of state money, and with the trustees of postal savings bank funds, and with any county treasurer, any city treasurer, the treasurer, or other fiscal officer responsible for public funds, of any township, board of education, school district, or other municipal body, for the security of such funds."

The court in applying the deposit statute to the statute defining public moneys said (93 F.2d 582):

"We are unable to find any statutory definition of public moneys prior to the act last above referred to.

"It must follow from these decisions and the statutory definition which follows them that all funds which come into the hands of a public officer in Kansas by virtue of his office, whether they be held for the benefit of a private person, or belong to the state or some political subdivision thereof, are public funds."

The court, after citing Lewis v. Fidelity & Deposit Company, 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794; Fidelity & Deposit Co. of Maryland v. Kokrda, 10 Cir., 66 F.2d 641, and Baltimore & O. R. Co. v. Smith, 3 Cir., 56 F.2d 799, held that the funds in the hands of the clerk of the court were public funds and that a national bank had the power

under Section 90, 12 U.S.C.A. to pledge its assets to secure a deposit for such fund.

This court, therefore, concludes

First, that the funds in the hands of the bank commissioner are public funds;

Second, that under the laws of Oklahoma, a state bank has power to pledge its assets to secure a deposit of such funds;

Third, that under 12 U.S.C.A. § 90, such funds are deemed public money of a state and a national bank has power to pledge its assets to secure a deposit of such fund.

The court finds generally for the defendent in each case. Findings of fact, conclusions of law and decrees consistent with this opinion may be submitted. An exception is allowed the plaintiff in each case.